## OLIVE BELLE INGHAM ET AL V. B. S. HARRISON.

No. A-2323.  Decided December 7, 1949.
(224 S. W., 2d Series, 1019.)

*Elmer Ware Stahl* and *A. R. Sohn,* both of San Antonio, for petitioners.

The Court of Civil Appeals erred in its holdings regarding the rights of plaintiff to claimed interest and court costs. Kansas City Life Ins. Co. v. Duvall, 129 S. W. (2d) 770; Gilmore v. Transit Grain & Com. Co., 213 S. W. (2d) 880; Stubblefield v. Cooper, 37 S. W. (2d) 818.

*Ben F. Foster* and *R. G. Harris,* both of San Antonio, for respondent.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

This rather complicated dispute between various parties regarding a builder's lien note and contract comes to us only on the subordinate issues of attorney's fees, interest and court costs allowable against the note makers and property owners, Mesdames Ingham and Chaney, who are the petitioners here. They originally sued the contractor and payee of the note, Van Smith, in damages for failure to complete the dwelling in question according to the contract. Soon thereafter, Smith's assignee, B. S. Harrison, who is respondent here, sued them and sundry alleged material lien claimants seeking: (a) recovery against petitioners for the sum of $9,000.00 shown on the note as unpaid, with interest according to the terms of the note at 10% per annum from its stipulated maturity date of June 1, 1946, and stipulated attorney's fees of 10%; (b) similar recovery for so-called "extras" and "changes" allegedly chargeable against petitioners over and above the contract price and aggregating about $3,200.00; (c) foreclosure of the contract lien with priority over the other lien claimants. The two suits were consolidated, and petitioners, Mesdames Ingham and Chaney filed extended pleadings denying respondent Harrison's status as a bona fide purchaser of the note, contesting all except a small fraction of the claim for "extras", asserting a right to damages (as in their original suit) of some $5,000.00 and set-offs of several thousand dollars more on account of materials furnished to the work by various parties and either paid for by petitioners for account of the contractor, Smith, or not paid for at all; offering to pay Harrison whatever balance might be finally adjudged as due him; contesting his right to attorney's fees or to interest that might accrue prior to final judgment, etc.

In the course of an extended trial there was proof that more or less from the beginning it was understood between the

contractor Smith and petitioners, though not stated in the contract documents, that the balance of $9,000.00 shown on the note as unpaid was to be procured for the benefit of both parties through a loan against the premises and that Smith took an active part in procuring commitments and making arrangements for the loan. In this connection the original arrangement between the parties was a contract for a total consideration of $14,989.44 on which petitioners were to make cash payments as the work progressed, but in April 1946, after some three months of work, this arrangement was changed—apparently to facilitate the loan—by substituting the note (back-dated to January 14, 1946), building contract and a deed of trust in the face amount of $14,989.44, the note showing a credit of $5,989.44 theretofore paid in cash by petitioners, and thus leaving the note balance of $9,000.00 sued for by Harrison. The contract provided that the dwelling should be completed "in all respects" and delivered to petitioners free of all liens by June 1, 1946, which was also the maturity date stipulated in the note. There was evidence to support a finding that Smith did not substantially complete the dwelling by the agreed date, and evidently neither he nor his assignee Harrison made any effort to collect the note until some eight months later in February 1947. By the 12th of that month a loan from a life insurance company had been arranged for in the sum of $9,000.00, the loan to be closed through the Texas Title Guaranty Company and to be insured by the latter as a valid first lien on the premises. By that time the facts had come to light that the above-mentioned materialmen were unpaid and had filed lien claims of several thousand dollars, while there was a serious question as to whether the house had been properly constructed. There had evidently been considerable discussions between the title company, the petitioners, and Smith and Harrison's attorneys with reference to these matters and the intended loan on the premises. On February 8, 1947, Harrison's attorneys demanded that petitioners appear at the title company office to close the loan on February 12th under penalty of foreclosure and being charged with attorney's fees on the note. Petitioners appeared, but the loan papers were not in proper form and had to be redrawn, as was done during the ensuing few days. On February 21st thereafter, before petitoners returned to sign the new loan papers, Smith filed a notice of mechanic's lien with the county clerk for his claimed "extras" in the amount of $3,211.52 and formally assigned such claim to respondent Harrison. On February 24th, when petitioners came back to the office of the title company, the latter had on hand the redrafted loan papers and a check of the lender payable to itself and petitioners for

$9,000.00. As above stated, it was contemplated by all parties that the loan was to replace the obligation of petitioners to Harrison, and in the normal course of events petitioners would have executed the loan documents and, together with the title company, would have endorsed the lender's $9,000.00 check over to Harrison. The title company, however, in its capacities of insurer of the proposed new lien and agent of the proposed lender, did not intend to close the loan without a previous release of all lien rights of Harrison and the other lien claimants. There was apparently conflicting evidence as to whether Harrison consented that the claims of the unpaid materialmen might be paid from the proceeds of the check as an offset against his rights as note holder—but he refused to forego the claim for "extras" or to allow petitioners an offset of about $1,000.00 which they had paid to materialmen. Petitioners, like the title company, were unwilling to close in view of such refusal, but were willing to close without receiving any offset on account of their claim of several thousand dollars damages for breach of the construction contract. Under these circumstances petitioners, with Harrison's knowledge, endorsed the lender's check and left it with the title company on February 24th, (where it remained for several months) but, for the reasons indicated, the loan was never consummated and this suit followed within about thirty days after February 24th.

The trial court, without independent fact findings, rendered a judgment largely favorable to petitioners, refusing respondent Harrison the status of a bona fide holder of the note, disallowing the claim for "extras" except for a small fraction thereof very slightly in excess of what petitioners had always admitted owing, and awarding respondent Harrison a net recovery of only $3,293.58 (as against his total claim of over $12,000.00) with foreclosure. The figure of $3,293.58 was arrived at by deducting from the $9,000.00 shown on the note as unpaid an allowance of $1,000.00 to petitioners on their claim for damages, a set-off of approximately $1,000.00 for payments made by petitioners to materialmen, and an amount of about $4,000.00 which the judgment awarded to the unpaid materialmen and declared to be payable out of what petitioners owed Harrison and as a credit against that indebtedness. Interest was allowed Harrison on his recovery of $3,293.58, at 6% from February 24, 1947, to the date of judgment, August 7, 1948, and at 10% thereafter—this despite the terms of the note, which provided that the interest should accrue from its maturity date of June 1, 1946, and at the rate of 10%. Harrison's claim for 10% attorney's fees was altogether disallowed.

On appeal by Harrison, the Court of Civil Appeals affirmed the more important dispositions of the judgment but modified it so as to allow him interest on his recovery of $3,293.58 at 10% from June 1, 1946, and 10% of $3,293.58 as attorney's fees. It taxed the costs of appeal equally between petitioners and respondent. 223 S. W. (2d) 267.

Petitioners attack these rulings of the Court of Civil Appeals, asserting that: (a) no allowance should have been made of attorney's fees; (b) no interest should be allowed except to accrue after the final judgment of the Supreme Court; and (c) petitioners should have been taxed substantially less than half the costs in the Court of Civil Appeals. Petitioners also complain of the appellate court's failure to make fact findings in response to some thirty-odd requests made in their motion for rehearing.

■ We agree with the Court of Civil Appeals that there was no justification for the trial court having awarded a rate of interest of 6% for the period between February 24, 1947, and the date of judgment. Harrison's rights as asserted both before and in the suit were on the contract, and the only rate stipulated in the contract was 10%. Articles 5069-70, Vernon's Annotated Civil Statutes. With respect to the interest period, however, we think the court erred in holding it to begin on June 1, 1946. Continental National Bank of Ft. Worth v. Connor, 147 Texas 218, 214 S. W. (2d) 928, cited below, indeed recognizes that in cases like the present, a note owner who is not a holder in due course takes subject to the defenses of the maker, including those arising from the building contract. See also cases such as Mazzola v. Lucia (Tex. Civ. App.,) 109 S. W. (2d) 273, error refused, 128 Texas 666. Here, despite the contractor's obligation being the consideration of the note and providing for full completion and delivery of the house free of liens by June 1, 1946, the same day as the maturity date in the note, there was considerable evidence that the house was not completed until long after that date and by the judgment, of which no complaint is now made by respondent, the contractor even at the date of judgment had failed to discharge several thousand dollars of liens which were his responsibility to discharge. The trial court presumably found, therefore, that the note was in equity not due on its maturity date and that accordingly interest would not then begin to accrue. In this connection we consider—without suggesting that the court below necessarily thought otherwise—that there would be no inconsistency on the part of the trial court in maintaining this position and at the same time holding that the stipulated maturity

date of the note was in fact the maturity date for the purpose of causing a subsequent purchaser to take subject to equities. There was also evidence from which the trial court may be presumed to have found that the arrangement reflected by the note and contract was modified by the parties so as to postpone actual maturity of the note until the loan of $9,000.00 should be procured through the channels by which the parties were negotiating. We do not understand the Court of Civil Appeals to have considered the great preponderance of the evidence to be contrary to any of the foregoing conclusions implied from the trial court's judgment. It simply refers to the maturity date of the note as being controlling.

As to the correctness of the date fixed by the trial court for the accrual of interest to begin—that is February 24, 1947— perhaps the latter was chosen on the theory that petitioner's note was agreed to be payable only when the loan was consummated and that on February 24th it first became evident—as it did—that no loan would materialize. But this disregards the fact that at that time Harrison clearly was claiming over $3,200.00 as a lien for "extras" to which he was not entitled and in addition was refusing to allow petitioners credit for about $1,000.00 paid by them to materialmen who should have been paid by the contractor. The court having later found against Harrison on both these items, we may view the situation on February 24, 1947, as if both were established as unjust demands on that date. Laning v. Iron City National Bank, 89 Texas 601, 35 S. W. 1048; Gulf Pipe Line Co. v. Nearen, 135 Texas 50, (Syl. 4) 138 S. W. (2d) 1065, 1068, syallabus number (5); O'Connor v. Kirby Inv. Co., (Tex. Civ. App.,) 262 S. W. 554, error refused, 115 Texas 616; Kinzbach Tool Co. v. Corbett-Wallace Corporation, 138 Texas 565, 160 S. W. (2d) 509. Assuming the agreement to liquidate petitioners' obligations from the loan proceeds, it follows that the failure to pay those obligations on February 24th was due to the fault of Harrison in insisting on his unjust claims. The situation was in effect the same as if petitioners had made a formal tender to respondent of what the court later found to be actually due him under the note. It was not a question, as suggested by the court below, of petitioners being unable to get a loan. The loan, as respondent knew, was available in the form of a check, which petitioners had endorsed for the purpose of paying the proceeds to satisfy what was legitimately owing to respondent, and there was obviously no objection by respondent to anything about the transaction except the just conditions imposed by petitioners and the title company on the payment. The fact

that the title company made the same conditions as did petitioners does not change the situation. We therefore conclude that interest did not begin to accrue even so late as February 24, 1947, the date fixed by the trial court. Within a relatively insignificant period of time thereafter, respondent Harrison brought this suit in which he asserted the full claims heretofore described and even repudiated any previous willingness to allow as credits against petitioners' note the large accounts of unpaid materialmen. We think the character of respondent's suit was such as at least not to place him in a more equitable position with regard to interest than he had theretofore occupied. We therefore conclude that interest should not have been allowed to accrue before the date of the judgment. See all the cases last above cited and also Keystone Pipe & Supply Co. v. Zweifel, 127 Texas 392, 94 S. W. (2d) 412. Pursuant to the terms of Article 5072, Vernon's Annotated Civil Statutes, the correct rate was 10%, and the correct accrual date is August 7, 1948, the date of the trial court's judgment rather than the date of the judgment of this court.

For substantially the same reasons heretofore mentioned we think the trial court was correct in disallowing respondent the 10% attorney's fees stipulated in the note and the Court of Civil Appeals incorrect in reforming the judgment so as to allow such fees as applicable to the balance of some $3,200.00 adjudged in respondent's favor. Laning v. Iron City National Bank; O'Connor v. Kirby Inv. Co.; Kinzbach Tool Co. Inc. v. Corbett-Wallace Corporation; all supra.

■ Since petitioners were successful in the Court of Civil Appeals on the main financial issues in the case, and we now hold that that court should not have granted even the relief it did grant against them, the costs in that court should be taxable entirely against respondent Harrison rather than divided equally as was provided below.

The judgment of the Court of Civil Appeals is reversed as to those parts of it which modified the trial court's judgment so as to permit respondent, B. S. Harrison, to recover interest prior to the date of the latter judgment and so as to permit him to recover attorney's fees, and as to that part which assessed one half of the costs of appeal against petitioners, Olive Belle Ingham and Cleo Davidson Chaney. The judgment of the trial court is here modified so as to eliminate its provision allowing said respondent recovery for interest prior to the date of said judgment, and as so modified it is affirmed. All costs in this

court and in the Court of Civil Appeals are taxed against respondent Harrison.

Opinion delivered December 7, 1949.

No motion for rehearing filed.