**McCUTCHEON et al.**

v.

**UNION MERCANTILE CO. et al.**

No. 5027.

Court of Civil Appeals of Texas.

El Paso.

April 21, 1954.

Rehearing Denied May 12, 1954.

Preston & Tomlin, Pecos, for appellants.

J. H. Starley, and Henry Russell, Pecos, for appellees.

McGILL, Justice.

By this suit three separate suits by appellees against appellants were consolidated. In those suits Union Mercantile Company, Popular Supplies, Inc., and Collie Electric Shop as plaintiffs each sought to recover judgment against appellants as defendants and also against Jack McCutcheon, the contractor, and Marcus Dingler and wife, Margarette Dingler, the owners, for material and supplies furnished the contractor and used in the construction of a residence on lots 15 and 16 in Block 7 of Mountain View Addition to the town of Pecos City, Reeves County, Texas. Plaintiffs also sought to establish and foreclose their materialmen's lien against said property. Trial was to the court without a jury, and judgment rendered in favor of plaintiffs respectively for the full amount of their claims against the contractor and against all other parties, establishing their respective claims as liens of

equal rank against the property, and adjudging such liens superior to the liens of Fort Davis State Bank and W. W. McCutcheon, foreclosing such liens and ordering sale of the property to pay same.

Jack McCutcheon, the contractor, filed no answer and he and the Dinglers have not appealed. The facts are uncontroverted; the property involved was at all relevant times the homestead of the Dinglers. On January 9, 1953, the Dinglers entered into a mechanic's lien contract with Jack McCutcheon for the construction of a residence on the above described property, the contract price being $16,500, which was evidenced by one promissory note in such amount payable to Jack McCutcheon or order. The note recites that it is given in full payment for the construction of certain improvements upon the lots "this day contracted to be erected" by Jack McCutcheon for the Dinglers, and that to secure payment thereof an express mechanic's lien was given by said contract upon said lands and improvements. On January 13, 1953, Jack McCutcheon endorsed the note to Fort Davis State Bank and assigned the lien contract covering same to the Bank and such lien and assignment was filed and recorded in the Deed Records of Reeves County on January 14, 1953. The bank advanced $11,000 to Jack McCutcheon, for which he executed his note with W. W. McCutcheon as surety, and the $16,950 note as collateral security. Prior to April 13, 1953, Jack McCutcheon notified the Dinglers he was unable to complete the contract and on that date the bank and W. W. McCutcheon entered into a written contract with the Dinglers whereby the Dinglers executed two notes, one for $11,165, payable to the order of the bank and one for $5,785 payable to the order of W. W. McCutcheon, such notes being in lieu and extension of the $16,950 note. In consideration of the second note W. W. McCutcheon agreed to fully complete the contract for the improvements. This agreement also provided that payment of the note to the bank should in no way depend upon the performance of the contract of W. W. McCutcheon to complete the improvements. Each of the plaintiffs alleged that written notice of its claim was given to the Dinglers—the Union Mercantile's claim on April 15, 1953, which by trial amendment was changed to March 26, 1953; the popular Supplies, Inc. claim on April 16, 1953, and by trial amendment it was alleged that actual notice of this claim was given on March 26, 1953; the Collie Electric's claim on May 29, 1953, and by trial amendment it was alleged that actual notice of this claim was given on March 26, 1953. Nowhere is it alleged nor does the proof show that when any of these notices were served on the Dinglers they were indebted in any amount to Jack McCutcheon, the original contractor, to whom they executed the mechanic's lien.

There should be no serious contention that the original note for $16,950 was not a negotiable note. It has all the requirements of a negotiable instrument as prescribed by the Negotiable Instrument law, Art. 5932, R.C.S. The fact that it refers to the mechanic's lien contract by express provision of the statute is unimportant. It is nevertheless an unconditional promise to pay. Art. 5932, Sec. 3 (2). The owners, the Dinglers, had therefore paid the full amount of the lien contract by execution and delivery of the negotiable promissory note to the contractor. They owed him nothing at the time the notices were served on them, since at that time he had transferred the note and lien contract to the bank. Appellees could fix no liens against the homestead except by contract executed as prescribed by Section 50 of Article 16 of the Constitution, Vernon's Ann.St. They had no such contract. Therefore, any right to a lien in their favor could be only derivative from the lien created by the contract which the owners executed with Jack McCutcheon. Since that contract had been assigned by Jack McCutcheon to the bank to secure the $16,950 negotiable note the owners owed Jack McCutcheon nothing. Their debt was to the bank, the holder in due course of the $16,950 note. Therefore appellees acquired no lien against the property.

Fullenwider v. Longmoor, 73 T.ex. 480, 11 S.W. 500. By the contract of April 13, 1953, W. W. McCutcheon acquired a lien derived from the original contract to secure the $5,718 note given him for completion of the contract. The Bank retained a lien derived from the original contract to secure the $11,165 note evidencing money advanced by it to Jack McCutcheon, with interest. The judgment is accordingly reversed and rendered.

Reversed and rendered.