### FIRST NATIONAL BANK OF LUBBOCK

v.

### Myrtle JENKINS et al.

### No. 7078.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 18, 1961.

Crenshaw, Dupree & Milam, Lubbock, W. B. West III, U. S. Atty., and Robert S. Travis, Asst. U. S. Atty., Fort Worth, Abbott M. Sellers, Acting Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott and John A. Bailey, Washington, D. C., for appellants.

Howard & Tucker, Key, Carr, Carr & Clark, Evans, Pharr, Trout & Jones, A. W. Salyars, Edward W. Napier, James F. Moore, Hugh Anderson, O'Connor & Brister and Treadaway & Blumrosen, Lubbock, for appellees.

CHAPMAN, Justice.

This suit was instituted by First National Bank of Lubbock, hereafter called Bank, to recover upon a note held by it and to foreclose a mechanic's and materialmen's lien contract made simultaneously with the note to secure its payment. The lien was on a residence in Lubbock and was executed by J. T. Jenkins and wife, Myrtle Jenkins, as owners of the property. J. T. Jenkins was deceased at the time of the trial so the defendants are Myrtle Jenkins, the heirs and legal representatives of the estate of J. T. Jenkins, deceased; the United States of America, claiming under a notice of tax lien filed; and various suppliers of labor and materials claiming, by their cross-actions, liens under affidavits filed by them.

The questions for decision by the Court below were the amounts to be awarded to the various claimants and the priority of their respective liens asserted. The case was tried upon an agreed stipulation of facts. Various money judgments were awarded with foreclosure of all liens asserted. The proceeds of the foreclosure sale were ordered prorated between the Bank and the various affidavit claimants in proportion to the respective amounts of their judgments up to the face amount of the note, plus interest and attorney's fees, and the balance of the proceeds above the amount represented by the note was ordered paid to the United States of America up to the amount of the tax lien claimed by it. In other words, the liens of Bank and the various affidavit claimants were held to be of equal standing and superior to the lien of the United States of America. Bank and the United States of America have appealed from the court's judgment. The former asserts its lien is entitled to priority over all claimants. The latter admits the priority of Bank's lien but urges the priority of its lien over all the affidavit claimants.

On August 4, 1958, J. T. Jenkins and wife, Myrtle Jenkins, entered into a contract with W. M. Averitt for the construction of a residence upon property located in Ranch Acres, an addition to the city of Lubbock. The contract was the usual form of a mechanic's and materialmen's lien contract in use in Texas and was properly signed and acknowledged by both Mr. and Mrs. Jenkins before any work was done or materials furnished for the construction. The lien provided for in the contract secured payment of a note for $18,000 executed simultaneously therewith payable to W. M. Averitt. The contract was filed for record on August 5, 1958, and duly recorded the next day. The note was transferred

by Averitt to appellant bank on August 4, 1958, by endorsement and delivery and by written transfer.

At the time the subject contract was made it was, by stipulation of the parties thereto, the intention of the Jenkins to occupy the residence to be built on the unimproved lot described therein as their homestead and they moved into the house on September 9, 1958. J. T. Jenkins died three days later and the residence was completed on about November 1, 1958.

"By arrangements with the said W. M. Averitt, said J. T. Jenkins, at all pertinent times up to the date of his death, supervised the construction of the improvements contemplated by the contract * * * procured the materials and the labor for such construction, and paid for such labor and materials as were paid for from the funds advanced for that purpose by First National Bank at Lubbock * * *."[1] Bank paid over a total of $14,000 plus certain insurance premiums.

The various affidavits of the suppliers of labor and materials were filed during a period from about October 8, 1958, through December 11, 1958, except that of J. Leon Henry, which was filed on January 19, 1959.

■ We hold that the contract lien held by Bank was entitled to priority over the lien of all other claimants. The $18,000 note executed by Mr. and Mrs. Jenkins to Mr. Averitt for the full contract price of the residence shows to be a negotiable instrument in customary form and there is no probative evidence to the contrary. Immediately upon its transfer to Bank the indebtedness of Jenkins to Averitt ceased. They not being indebted to him any further the appellees suppliers could fix no lien against the homestead except by contract

executed as prescribed by Sec. 50 of Art. 16 of the Constitution of Texas, Vernon's Ann.St.[2] McCutcheon v. Union Mercantile Co., Tex.Civ.App., 267 S.W.2d 916 (Writ Refused); Bordon v. Tapp, Tex.Civ. App., 333 S.W.2d 417.

Appellees suppliers urge Newman v. Coker, Tex.Civ.App., 310 S.W.2d 354 and Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652, 30 L.R.A. 765 as authority for sustaining the trial courts' findings of equal priority between the liens of the suppliers and Bank. Those cases are clearly distinguishable upon the facts to the instant case and we believe are not proper authority for the courts holdings in this case. We find no substantial distinguishing features in our case and the McCutcheon case just cited and feel bound by its holding. There the court said [267 S.W.2d 917]:

"There should be no serious contention that the original note for $16,950 was not a negotiable note. It has all the requirements of a negotiable instrument as prescribed by the Negotiable Instrument law, Art. 5932, R.C.S. The fact that it refers to the mechanic's lien contract by express provision of the statute is unimportant. It is nevertheless an unconditional promise to pay. Art. 5932, Sec. 3(2). The owners, the Dinglers, had therefore paid the full amount of the lien contract by execution and delivery of the negotiable promissory note to the contractor. They owed him nothing at the time the notices were served on them, since at that time he had transferred the note and lien contract to the bank.

"Appellees could fix no liens against the homestead except by contract executed as prescribed by Section 50 of

---

1. The quote above shown is part of the stipulation of facts made by the parties.

2. It was stipulated by the parties that the property was a homestead. Additionally, our Supreme Court has held since an early date that the homestead comes into existence when the intention to occupy the premises as a homestead is concurrent with the execution of a contract for erection of a dwelling. Cameron v. Gebhard, 85 Tex. 610, 22 S.W. 1033; West End Town Co. v. Grigg, 93 Tex. 451, 56 S.W. 49.

Article 16 of the Constitution, Vernon's Ann.St.

"They had no such contract. Therefore, any right to a lien in their favor could be only derivative from the lien created by the contract which the owners executed with Jack McCutcheon. *Since that contract had been assigned by Jack McCutcheon to the bank to secure the $16,950 negotiable note the owners owed Jack McCutcheon nothing. Their debt was to the bank, the holder in due course of the $16,950 note. Therefore appellees acquired no lien against the property.*" (Emphasis ours.)

■ We now turn to a consideration of the priority of liens as between the United States of America and the affidavit claimants. The dates in the processes employed for perfecting liens by the government and the affidavit claimants have been stated above. Under such facts we hold the lien of the United States of America has priority over the affidavit claimants. United States of America v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53; United States of America v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264.

Though the two cases just cited involve attachment liens they originated in states which made them choate and perfected at the time of filing. Additionally, the United States Supreme Court has applied this rule to statutory mechanic's liens. United States of America v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871. There the court held:

"A federal tax lien has priority over a statutory mechanic's lien, not yet reduced to judgment, even though the mechanic's lien was specific, prior in time, perfected in the sense that everything possible under state law had been done to make it choate, and was being enforced before the federal tax lien arose."

Accordingly, the judgment of the trial court is reversed and rendered wherein it held the affidavit claimants were entitled to equal priority with Bank and that all those liens were superior to the lien of the United States of America. The trial court will reform its judgment to hold Bank's lien has priority over all others and that the lien of the United States of America had priority over the affidavit claimants. Bank and the government having prevailed on their contentions the costs are adjudged against the affidavit claimants.