**SCHLUMBERGER WELL SURVEYING CORPORATION et al., Appellants,**

**v.**

**Frank L. JAMES et ux., Appellees.**

**No. 14452.**

Court of Civil Appeals of Texas.

San Antonio.

March 9, 1966.

Rehearing Denied April 6, 1966.

Kampmann, Kampmann & Church, San Antonio, Perkins, Floyd, Davis & Oden, Alice, for appellants.

Putman & Putman, Ferguson & Davis, Michael W. Wagner, San Antonio, for appellee.

BARROW, Justice.

This case involves the priority of liens of materialmen who furnished materials and services used by an absconding contractor in drilling a water well upon owners' homestead, and of the assignee of the promissory note and mechanic's lien contract executed by owners to the contractor. These parties are hereinafter sometimes referred to as "Suppliers," "Contractor," "Assignee," and "Owners."

Judgment was entered, after a non-jury trial, whereby the Owners' liability upon the note was fixed at $9,634.10, and Assignee was given priority for the sum of $7,000.00 which had been advanced by him, and the remaining $2,634.10 was divided among the Suppliers on a pro rata basis. Findings of fact and conclusions of law were filed. Suppliers have appealed, complaining of the judgment insofar as Assignee and Owners are concerned, but they do not question the pro rata distribution among themselves.

On November 18, 1961, Frank L. James and wife entered into an agreement with Stafford McCumber, whereby McCumber contracted to drill a water well on their homestead for $9,380.00, with a provision for credit to be given them for undrilled footage under 2,300 feet. A promissory note with specific reference to the mechanic's lien contract, a mechanic's lien contract, and a drilling contract were executed at this time by Owners and Contractor. It was necessary that Owners obtain financing through Farmer's Home Administration (FHA), and it was contemplated that this lien was to be assigned to the FHA for permanent financing. The drilling and mechanic's lien contracts required Contractor to pay for all labor and materials furnished on this job, and these bills were required to be paid before the FHA would make its loan to Owners.

It was necessary that Contractor secure interim financing for this job, and on November 27, 1963, the note and mechanic's lien contract were assigned to Assignee, J. Arnold Uzzell, in exchange for his agreement to furnish the necessary funds needed to drill this well up to the sum of $8,000. Assignee advanced Contractor the sum of $7,000 by co-signing McCumber's notes at Assignee's bank. Of this sum, $2,000 was advanced while the work was in progress, and the remaining $5,000 was paid a few days after the well was completed. The trial court found that little of this money was used by McCumber on the well. Shortly after receiving the $5,000 McCumber absconded and his whereabouts were thereafter unknown to all interested parties.

On December 1, 1963, McCumber commenced work on this contract and on January 9, 1964, the well was completed. Owners were unable to close their loan with FHA because Suppliers made claim for materials and services furnished to McCumber on this job. The trial court found that Suppliers furnished materials, supplies and services in connection with drilling said well as follows: Schlumberger Well Surveying Corp., $425.00; Halliburton Company, $1,199.31; Adcock Pipe and Supply Company, $4,414.52; and Frost Drilling Company, $1,015.00. All, except Frost Drilling Company, gave proper notice and recorded their mechanics' and materialmen's liens in accordance with law. Frost did not do so because a closer with title company handling Owners' FHA loan said Frost's claim would be protected and a lien was not necessary.

Suppliers do not question that the note given by Owners as consideration for drilling this water well was a negotiable instrument. They assert, however, there is no evidence to support the trial court's finding that Assignee was a holder in due course to the extent of $7,000, and urge that he was not, as a matter of law.

The mechanic's lien contract requires that all bills be paid, and Assignee knew

that it was necessary that they be paid before Owners could close their FHA loan. There was evidence that Assignee should have known of McCumber's poor financial condition before the $5,000 was advanced. Assignee was informed that McCumber was writing hot checks, and he was informed that at least one materialman had not been paid, nor had the driller and his son. Further, it was shown that Assignee stood to make at least $1,380 by the lending of his credit for about sixty days.

■ Assignee testified that he advanced the money in good faith and assumed that Contractor would pay all bills with this money. He is corroborated by his own act in advancing Contractor $3,000 on another job, three days after the $5,000 was given McCumber. Assignee further testified that Contractor furnished an affidavit that all bills were paid. When this evidence is viewed in the light required under the "no evidence" test, it amounts to more than a scintilla that Assignee was a holder in due course to the extent of the $7,000 advanced by him.

Suppliers assert that, in any event, their liens are entitled to priority or at least equal dignity with Assignee's lien under the "relate back" or "inception" theory as set forth in Oriental Hotel Co. v. Griffiths, 88 Tex. 574, 33 S.W. 652 (1895). See also Sullivan v. Texas Briquette & Coal Co., 94 Tex. 541, 63 S.W. 307 (1901).

It is seen that since this well was drilled upon the homestead of Owners, the liens of Suppliers, under Art. 5460, Vernon's Ann.Civ.St., were derivative of the contract entered into between Owners and Contractor. Assignee, as a holder in due course of the note given to Contractor by Owners, is entitled to priority under the rule set forth in McCutcheon v. Union Mercantile Co., Tex.Civ.App., 267 S.W. 2d 916, wr. ref.

In McCutcheon, the Court resolved a very similar factual situation by holding

the assignee of a mechanic's lien contract was entitled to priority over materialmen who had furnished materials to the original contractor. It was held that the note was a negotiable instrument, although it referred to the mechanic's lien contract. It was further held that the owners owed the contractor nothing at the time the materialmen perfected their liens, since the contractor had previously transferred the note and lien contract to the assignee. The property was the homestead of owners, and since the materialmen had no contract executed as prescribed by Sec. 50, Art. 16 of the Constitution, Vernon's Ann.St., any right to a lien in their favor could be derivative only from the lien created by the mechanic's lien contract. This contract and note had been assigned, so the owners owed contractor nothing. Owners' debt was to the assignee, the holder in due course, and the assignee was given priority over the materialmen. See also First National Bank of Lubbock v. Jenkins, Tex.Civ.App., 350 S.W.2d 52, no wr. hist.; Borden v. Tapp, Tex.Civ.App., 333 S.W.2d 417, no wr. hist.

Oriental Hotel Co. v. Griffiths, supra, involved the conflicting priority rights between a deed of trust holder and materialmen. The Court held that the materialmen's liens had their inception at the beginning of the work upon the project and were equal to the deed of trust executed upon the same date. The proceeds of the foreclosure were paid pro rata between both claimants. There was no assignment of a negotiable note in that case. The "inception" theory has recently been applied to hold that liens of the assignee of a mechanic's lien contract and claimants who had furnished labor and materials on the job were of equal dignity, and the materialmen and assignee were held to be entitled to share pro rata in the foreclosure proceeds. See Lubbock National Bank v. Hinkle, Tex.Civ.App., 397 S.W.2d 285, no wr. hist.

The *Hinkle* case does not distinguish the rule of McCutcheon v. Union Mercantile Co., supra, and does not consider whether the materialmen were derivative claimants of the contractor in perfecting a lien against the homestead. It is our opinion that this is a significant distinction between the facts set forth in Oriental Hotel Co. and those of *McCutcheon*. The Supreme Court in McConnell v. Mortgage Investment Co., 157 Tex. 572, 305 S.W.2d 280 (1957), while approving the rule in *Oriental Hotel Co.*, recognized it as a comparatively narrow one, and said that the rule should not be expanded to apply to factual situations not strictly analogous to those disclosed in the reported opinion.

■ In our case the property sought to be foreclosed is the homestead of Owners and since Suppliers had no contract with the Owners as prescribed by Sec. 50, Art. 16 of the Constitution, they can perfect a lien only as derivative claimants under the contract of McCumber. At the time they furnished the material and services to McCumber, he had assigned all his interest in the mechanic's lien contract given by Owners. Suppliers did not perfect a lien against this homestead property and the trial court properly held that Uzzell, as holder in due course of the negotiable note assigned by Contractor, is entitled to priority in the enforcement of the mechanic's lien contract executed by Owners.

■ Suppliers assert that the trial court erred in not finding that Uzzell and McCumber drilled the well as partners or were in a joint venture. These contentions are based largely on activities of these parties in trying to make an oil well out of the water well. During the drilling operation it appeared that a good showing of oil sand was discovered and an oral agreement was made among James, McCumber and Uzzell to test same. Uzzell testified that he agreed to pay, and did pay, an additional $400 for these tests, and was to receive a one-fourth interest in production if oil was discovered. There was testimony from a third party who had some negotiations relative to purchasing the well which would have supported a finding of partnership. However, the trial court refused to find either a partnership or a joint venture and we cannot say that this refusal is without support in the evidence. It is therefore immaterial as to whether or not Suppliers are entitled to interest and attorney's fees on their claim against Uzzell on a sworn account.

Suppliers also assert that the judgment should have required Owners to pay interest at the rate of 10% after maturity, with an additional sum of 10% for attorney's fees, as called for under the terms of the note. The promissory note signed by Owners was a ninety-day note with interest at the rate of 6% per annum with a provision for interest at the rate of 10% per annum if not paid at maturity. Owners did not make a formal tender at any time, although about a week before the trial, they filed an amended petition and alleged that they were ready, willing and able to pay the note if they could be protected on same.

■ The trial court found, as a matter of equity, that none of the parties were entitled to attorney's fees, although Assignee, Suppliers and Owners had prayed for same. In our opinion the trial court did not abuse its discretion. Ingham v. Harrison, 148 Tex. 380, 224 S.W.2d 1019 (1949). Owners were at all times willing to close the matter in accordance with their original agreement by securing an FHA loan. They were prevented from doing so because of the claims asserted against the Contractor by Suppliers. It would not be equitable to permit Suppliers to prevent Owners from closing the FHA loan and then to collect attorney's fees for the delay caused by their own claims.

The judgment is affirmed.