**Donald R. BERNHARDT and wife, Shirley H. Bernhardt, Appellants,**

v.

**McGUIRE & PRITCHARD, a Partnership, Composed of Wilson McGuire and Kip Pritchard, et al., Appellees.**

No. 9123.

Court of Civil Appeals of Texas, Amarillo.

Sept. 10, 1980.

Rehearing Denied Oct. 22, 1980.

Key, Carr, Evans & Fouts, Donald M. Hunt, Lubbock, for appellants.

White, Self & Davenport, Charles G. White and Erwin Davenport, Plainview, for appellees.

DODSON, Justice.

In this action, Donald R. Bernhardt and wife Shirley H. Bernhardt are the appellants and McGuire & Pritchard, a partnership composed of Wilson McGuire and Kip Pritchard, are the appellees. The action arises from the construction of a home by McGuire & Pritchard for the Bernhardts. The home is located in Plainview, Hale County, Texas. As payment for the construction of the residence, the Bernhardts executed and delivered to McGuire and Pritchard their one certain promissory note in the original principal sum of $131,000 with interest and attorney's fees as therein provided. The note was secured by a mechanics' and materialmen's lien on the homesite. McGuire and Pritchard brought this action to recover the alleged unpaid balance due on the note and for foreclosure of the mechanics' and materialmen's lien. By answer and counterclaim, the Bernhardts' allege, among other things, that they discharged the note by reacquisition and that the contractors failed to construct the residence according to the plans and specifications.

The trial was to a jury. The jury found, among other things, that the contractors did not materially fail to construct the house in accordance with the specifications, terms and conditions of the contract and subsequent modifications agreed to by the owners; that the contractors did fail to construct the house in accordance with the plans, the specifications and the contractual agreement made by the parties; that the sum of $5,000 would reasonably and adequately compensate the owners for damages caused by defects, failure to complete

and deviations from the contractual agreements made by the parties; that the contractors did fail to construct the house in accordance with the time for completion called for in the written contract; and that the sum of $11,300 would be a reasonable attorney's fee for the contractors for all phases of this litigation including an appeal to the Supreme Court of Texas.

The owners filed a motion for the court to disregard certain issues which the jury answered favorable to the contractor and a motion for judgment notwithstanding the jury's verdict. The trial court overruled these motions. Allowing certain credits and offsets, the trial court rendered judgment for the contractors for the unpaid balance on the note plus interest and attorney's fees and ordered foreclosure of the lien. From this judgment, the owners duly appeal. We modify the judgment, in part, as to prejudgment interest and as modified, we affirm.

On appeal, the Bernhardts claim, *inter alia*, that the judgment should be reversed because: (1) they discharged the note and mechanics' lien by paying $78,808 plus interest and reacquired the note; (2) the contractors are not entitled to a lien or foreclosure where they failed to complete the house as contracted and failed to request or secure a finding of substantial performance; (3) the trial court refused their request for a separate damage special issue on certain non–conforming cabinets; (4) the trial court failed to construe the specifications as requiring the cabinets to be built of birch; (5) the trial court refused to instruct the jury "that where there are at least two (2) reasonable constructions to be given an instrument, it should be construed against the party who prepared it"; (6) the evidence is legally and factually insufficient to support the jury finding of $5,000 in damages for failure to complete the house according to plans and specifications; (7) the trial court awarded prejudgment interest on the unpaid balance of the note at the rate of ten percent per annum from 25 October 1977; (8) the contractors are not entitled to attorney's fees as a matter of law; (9) the evidence is legally and factual-ly insufficient to support the jury's finding of $7,500 for the contractor's attorney's fees in the trial court; and (10) the court refused to submit their requested special issue on breach of express warranties.

■ By their first point of error, the owners claim the judgment should be reversed because they discharged the note and mechanic's lien by paying $78,808 plus accrued interest, and reacquired the note. In support of their position, the owners rely on Tex.Bus. & Com.Code Ann. subsection 3.601(c)(1) (Vernon Supp.1980), which provides, in part: "The liability of all parties is discharged when any party who has himself no right of action or recourse on the instrument reacquires the instrument in his own right." This subsection of the Code presupposes that the instrument is reacquired by a no–recourse party and then, in effect, states the general principle "that all parties to an instrument are discharged when *no party* is left with rights against *any other party on the paper*" (emphasis added). 3 R. Anderson, Uniform Commercial Code 102–03 (2d ed. 1971). In this instance, discharge by reacquisition is pled as an affirmative defense to the contractor's action on the note. Thus, as one of the essential elements of the defense, the owners must establish that they reacquired the note when the contractors were left with no rights against them on the paper.

■ The evidence shows that on 22 January 1977, the owners executed and delivered to the contractors their one certain promissory note in the original principal sum of $131,000 with interest and attorney's fees as therein provided. The note was given in payment for the construction of a residence on certain real property located in the City of Plainview, Hale County, Texas. Simultaneously, the owners executed and delivered to the contractors a mechanics' and materialmen's lien on the Plainview property to secure payment of the note. The contractors transferred the note and mechanics' lien to the First National Bank of Plainview, Texas, to obtain a portion of the interim financing for the construction of the residence.

The due date on the note was eight months from the date of execution and delivery, 22 January 1977. The mechanics' lien contract provides for completion of the residence within 160 days from that date (22 January 1977) or "within a reasonable time thereafter." Proceeding under the contract with the owners, the contractors began and continued with the construction of the residence. As construction of the residence proceeded, the bank made monthly advances to the contractors. Although the contractors had not completed construction of the residence by October of 1977, the bank had paid out $78,808 on the note.

Considering the note past due, the bank requested the owners to renew and extend the note or pay the $78,808 plus accrued interest. Being dissatisfied with the construction of the residence, the owners refused to renew and extend the note and, on or about October 1977, paid the $78,808 plus accrued interest. An official of the bank handed or mailed the note to the owners. After the owners received the note, the bank official told them to return the note for delivery to the contractors. On the same day the owners received the note from the bank, they delivered it to the contractors. On the back side of the note appears a no–recourse endorsement by the contractors to the bank and a transfer and assignment from the bank to the contractors. No other transfers appear on the instrument. Absent from the note is a recitation of payment or partial payment. On 25 October 1977, only 60 to 65 percent of the construction on the residence was completed. Proceeding under their contractual rights and obligations, the contractors continued with the construction of the residence.

In essence, the owners say that by paying the $78,808 to the bank and momentarily receiving the note from the bank, they discharged the note, unilaterally rescinded the construction contract and left the contractors with only an action, if any, on quantum meruit for the remaining construction of the residence. We do not agree. The evidence conclusively establishes that the parties did not mutually rescind the construction contract and the owners did not pay to the bank, the contractors or anyone else the face amount of the note. Nor do the owners so contend. Assuming, arguendo, that the owners reacquired the note from the bank by paying $78,808, by failing to show that the parties mutually rescinded the construction contract or that they paid the face amount of the note, they failed to establish that the contractors were left without any rights against them on the paper. Accordingly, we overrule the owners' first point of error.

■ By point fifteen, the owners say the judgment should be reversed because "the Contractors were not entitled to a lien or foreclosure, where they failed to complete the house as contracted and failed to request or secure a finding of substantial performance and thereby waived any such finding." We disagree. In response to special issue number eight, the jury found, in effect, that the contractors did not materially fail to construct the house in accordance with the specifications, terms and conditions of the contract executed on 22 January 1977 and the subsequent modifications agreed to by the owners. Following this issue in the charge, the court gave a definition of the phrase "materially fail." As used in the charge the word "materially" is synonymous with the word "substantially."[1] Thus, the jury's answer to special issue number eight is tantamount to a finding that the contractors did not substantially fail to complete the house in accordance with the plans and specifications agreed to by the parties.

■ The Texas courts have applied the doctrine of "substantial performance" to construction contracts since 1891. *Linch v. Paris Lumber & Grain Elevator Co.*, 80 Tex. 23, 15 S.W. 208, 213 (1891). This doctrine recognizes that literal performance of each and every particular of such a contract is virtually impossible. Rather than require perfect performance of every particular, substantial performance is regarded as full

---

1. Webster's New World Dictionary 875 (2d Coll. ed. 1980) (defining "materially").

performance. *Warren v. Denison*, 563 S.W.2d 299, 303 (Tex.Civ.App.–Amarillo 1978, no writ). Moreover, when a contractor has substantially performed a construction contract, he is entitled to enforce payment of the note by judgment and to foreclose the mechanics' and materialmen's lien given to secure payment on the note. *See Galbraith–Foxworth Lumber Co. v. Long*, 5 S.W.2d 162 (Tex.Civ.App.–Dallas 1928, writ ref'd).

■ Furthermore, when, as in this instance, "the court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence . . . ." Tex.R.Civ.P. 279. Following the mandatory admonishment of Rule 279, the trial court submitted special issue number eight. At the trial, the owners made several objections to the special issue and the accompanying definition. In this court, however, they made no challenge to the trial court's manner of submission of such issue and made no challenge to the jury's answer to the issue. Thus, having failed to challenge the issue and the jury's answer thereto in this court, the owners waive any defect or error in submission of such issue. *See Jackson v. Ewton*, 411 S.W.2d 715, 718 (Tex.1967); *Roper v. Jeoffrey Mfg., Inc.*, 535 S.W.2d 706, 708 (Tex. Civ.App.–Amarillo 1976, writ ref'd n. r. e.). Accordingly, we overrule the fifteenth point of error. Nevertheless, by this determination we are not expressing approval of the language used by the trial court in submitting the substantial performance issue.

By their seventh point of error, the owners say the judgment should be reversed because the trial court failed to construe the specifications as requiring the cabinets "to be built of birch." In this connection the specifications provide:

15. CABINETS AND INTERIOR DETAIL:

Kitchen Cabinets: Base Units Material Birch
Base Widths 24" Counter Tops Formica
Doors Flush Doors Paint Grade
Drawers: Material White Pine Fronts Flush-Birch
Guides Go Easy or KV Lin/Ft of units Plan
Wall Units: Material Birch Lin/Ft of Units Plan
Shelf Width 11¼"
Medicine Cabinets: Nutone As per Allowance Page
Bath Cabinets: Width 22" Material Birch
Footage Plan
Other Built-In Cabinets As Per Plan
Additional Information Shelves are made out of ¾" AB Fir Plywood

The evidence shows that the cabinets in question were built from birch plywood. In essence the owners maintain that the specification requires the contractors to build the cabinets in question from "solid birch wood" rather than from birch plywood, and that the cost of conforming the cabinets to specification is $16,000, as testified to by their expert witness.

■ In the trial court, the owners did not plead that the specification concerning "birch" is ambiguous. Moreover, the record fails to reflect that the owners in any manner requested the court to construe the specification. Nor does the record reveal any ruling by the trial court on the matter. Thus, under the circumstances, we must conclude that the owners waived the asserted error. *See Brunson v. Brunson*, 372 S.W.2d 761, 764 (Tex.Civ.App.–Amarillo 1963, no writ); *Marek v. Baylor County*, 430 S.W.2d 220, 222 (Tex.Civ.App.–Eastland 1968, writ ref'd n. r. e.); *Hughes v. Hughes*, 407 S.W.2d 14 (Tex.Civ.App.–Waco 1966, no writ); and 3 Tex.Jur.2d *Appeal & Error* § 98. Accordingly, the seventh point of error is overruled.

■ In the eighth point of error, the owners maintain that the judgment should be reversed because the trial court refused to instruct the jury "that where there are at least two (2) reasonable constructions to be given an instrument, it should be construed against the party who prepared it." The only function of an explanatory instruction is to aid and assist the jury in answering the issues submitted for its determination. *Jones v. McCoy*, 466 S.W.2d 667 (Tex.Civ.App.–Eastland 1971, no writ). The requested instruction is no more than an abstract proposition which is unrelated to any issue submitted for the jury's determination, and, as stated, the instruction provides no aid or assistance to the jury in

answering the issues submitted. Moreover, the instruction is based on the erroneous premise that the jury should construe the instrument. *See Cain v. Tennessee–Louisiana Oil Co.*, 382 S.W.2d 794, 799 (Tex.Civ. App.–Tyler 1964), *aff'd*, 400 S.W.2d 318 (Tex.1966), and the authorities there cited. Thus, we overrule the eighth point of error.

■ In their ninth point of error, the owners maintain that the judgment should be reversed because the trial court refused their requested separate damage issue on certain cabinets. The owners did not request a separate submission for each disputed item of damages. The trial court submitted an inclusive damage issue which is stated as follows:

### SPECIAL ISSUE NO. 6

What amount of money, if now paid in cash, would reasonably and adequately compensate the Bernhardts for damages, if any, caused by defects, if any, failure to complete, and deviations, if any, from the contractual agreements, both oral and written, made by the parties.

Answer in dollars and cents, if any.

Answer: $5,000.00

Tex.R.Civ.P. 277 gives the trial court discretion "to submit separate questions with respect to each element of a case or submit issues broadly" and further provides that "[i]t shall not be objectionable that a question is general or includes a combination of elements or issues." The owners do not contend and we do not find any abuse of such discretion by the trial court. Accordingly, we overrule the ninth point of error.

■ By their fifth and sixth points of error, the owners maintain that the evidence is legally and factually insufficient to support the jury's finding that $5,000 would reasonably and adequately compensate them for any damages caused by defects, failure to complete and deviations "from the contractual agreements, both oral and written, made by the parties." In support of these evidentiary challenges, the owners say the judgment should be reversed because the undisputed testimony of their ex-

pert witness established a cost of $16,000 to conform the cabinets to the specifications. The evidence given by the expert witness necessarily is opinion testimony. The expert's qualifications and the weight to be given his testimony were challenged by cross–examination. Moreover, the circumstances related to this challenged damage issue do not indicate only one conclusion. Therefore, the jury was not bound by the asserted expert's opinion testimony. *See Gregory v. Texas Emp. Ins. Ass'n*, 530 S.W.2d 105 (Tex.1975).

In summary, the evidence related to the challenged damage finding ranges from approximately $1,000 to an excess of $16,000. Thus, we conclude that there is some evidence of probative force to support the jury's challenged finding to this damage issue. Furthermore, after considering all of the evidence in support of and contrary to the challenged finding, we must conclude that such finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Accordingly, we overrule the fifth and sixth points of error.

By their twelfth point of error, the owners maintain that the judgment should be reversed because the trial court awarded the contractors prejudgment interest on the unpaid balance of the note ($44,342) at the rate of ten percent per annum from October 25, 1977. In their eleventh point, the owners say the judgment should be reversed because the contractors are not entitled to recover attorney's fees, as a matter of law. The note provides interest at the rate of eight and one–fourth percent per annum from the date of the note (22 January 1977) to maturity and interest at the rate of ten percent per annum on all past due principal and interest. The note further provides, "if this note is placed in the hands of an attorney for collection, or collected by suit . . . we agree to pay reasonable attorney's fees additional on the principal and interest then due hereon." In this connection the owners contend that the contractors are not entitled to prejudgment interest and attorney's fees because they

did not substantially perform the construction contract. In support of their position, the owners rely on *Ingham v. Harrison*, 148 Tex. 380, 224 S.W.2d 1019 (1949).

In *Ingham, supra*, in the absence of a finding of substantial performance on the construction contract, the court denied a recovery for prejudgment interest and attorney's fees as provided in the note. *Supra*, at 1021–23. Nevertheless, in view of the jury's unchallenged answer to special issue number eight, we do not consider the decision in *Ingham* controlling in this instance. Moreover, when a note is given as payment for a construction contract, and the contractor has substantially performed the contract, then the holder of the note is entitled to recover, among other things, prejudgment interest and attorney's fees as provided in the note. *See Galbraith–Foxworth Lumber Co. v. Long, supra.*

Concerning the prejudgment interest awarded in the judgment, the owners further say that the uncontroverted evidence shows that the residence was only 60 to 65 percent completed on 25 October 1977 and that on that day, they paid all of the accrued interest on the note. We observe that other than the jury's substantial performance finding, the record fails to show a completion date for the residence. Thus, under the circumstances, we must conclude that the contractors are only entitled to prejudgment interest at the rate of eight and one–fourth percent per annum on $44,342 from 25 October 1977 to 11 May 1979 (the date of the judgment) and post judgment interest at the rate of ten percent per annum on such past due principal and interest as provided in the note. Accordingly, the judgment is modified to reflect this conclusion, and the remaining contentions advanced by the owners under the eleventh and twelfth points of error are overruled.

By points thirteen and fourteen, the owners maintain that the evidence is legally and factually insufficient to support the jury's finding of $7,500 as reasonable attorney's fees for the contractors in the trial court phase of this action. In support of these contentions, the owners claim that the challenged finding is supported in part by evidence of legal services rendered to and incurred by the contractors before the construction contract was substantially performed and before the residence was completed and tendered by the contractors. In our view the jury's finding of substantial performance in response to special issue number eight renders immaterial these contentions by the owners. *See Galbraith–Foxworth Lumber Co. v. Long, supra.*

Nevertheless, the parties stipulated in open court, and introduced as evidence, that the contractors' attorneys spent eighty (80) hours in pre–trial preparation and approximately eighty (80) hours in the trial of this case; that such time was reasonable; and that the reasonable charge in Plainview, Texas for such time was from $50 to $60 per hour. Thus, under the circumstances, we must conclude that there is some evidence of probative force to support the challenged jury finding. Moreover, when we consider all of the evidence in support of and contrary to the challenged finding, we must further conclude that the challenged finding is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. Accordingly, we overrule the thirteenth and fourteenth points of error.

Lastly, in their tenth point of error, the owners say the judgment should be reversed because the trial court refused their requested special issues on alleged breaches of express warranties. In a general manner, the owners pled that, by reason of certain false, misleading or deceptive acts or practices and because of the provisions of Tex.Bus. & Com.Code Ann. section 17.50(a)(1) and (2) (Vernon Supp.1980), and that as a direct and proximate result thereof, they were adversely affected and suffered actual damages. In this regard, they further pled for damages under Tex.Bus. & Com.Code Ann. section 17.50(b) (Vernon Supp.1980).

At the owners request the Court submitted special issue number seven. This issue appears in the charge as follows:

SPECIAL ISSUE NO. 7

A. Do you find from a preponderance of the evidence that McGUIRE & PRITCHARD made any of the *representations*[2] listed below to the BERNHARDTS?

(Answer "Yes" or "No," as you may find, in Column 1 below.)

B. For each representation as you find were made by a "Yes" answer in Column 1, then answer, from a preponderance of the evidence, if such representation was a false, misleading or deceptive act or practice?

In connection with Special Issue No. B. and your answer to be placed in Column 2, you are instructed that "false, misleading or deceptive act or practice" means any act or series of acts which have the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous.

(Answer "Yes" or "No," as you may find, in Column 2 below for each representation to which you made a "Yes" answer in Column 1. You need not answer in Column 2 for any representation for which you answered "No" in Column 1.)

With two answer columns, as indicated by the instructions, the court inquired of the jury whether McGuire & Pritchard *represented* to the Bernhardts that:

(1) McGUIRE & PRITCHARD could construct the residence in a good and workmanlike manner when in fact McGUIRE & PRITCHARD could not so construct the home?

(2) McGUIRE & PRITCHARD was capable of constructing a residence that would be a structure of the highest quality when in fact McGUIRE & PRITCHARD was not capable of doing so?

(3) McGUIRE & PRITCHARD could construct the residence in accordance with the contract, plans, specifications and change orders when McGUIRE &

PRITCHARD was not capable of so doing?

(4) McGUIRE & PRITCHARD had the capacity to adequately design the residence desired by the BERNHARDTS when in fact McGUIRE & PRITCHARD did not have such capacity to design the home?

(5) McGUIRE & PRITCHARD could invert the selected home plans to preserve the original specifications while upgrading the home with superior materials when in fact McGUIRE & PRITCHARD was not capable of so doing?

(6) McGUIRE & PRITCHARD would utilize the highest quality of materials in its construction when in fact McGUIRE & PRITCHARD did not intend to do so?

In response to the inquiries, the jury answered "No" to 7(B)(1) through 7(B)(5) and "Yes" to 7(B)(6), but that such representation 7(B)(6) was not false.

In the refused issue, with a two column answer form and a definition of express warranty, the owners requested the court to further inquire of the jury whether the contractors expressly warranted the identical matters set forth in special issue 7(B)(1) through 7(B)(6). In effect, the owners contend that they are entitled to have the matters set forth in special issue 7(B) resubmitted to the jury in separate issues because a false misrepresentation under section 17.50(a)(1) and a breach of warranty under section 17.50(a)(2) are independent grounds of recovery and because they are entitled to have each element of each independent ground of recovery separately submitted to the jury. We do not agree.

■ In this instance, the owners' two theories of recovery are predicated on the same specific facts. Thus, with 7(B)(1) through 7(B)(6), the court submitted the controlling and predicating inquiries related to each theory of recovery. *See Valley Datsun v. Martinez*, 578 S.W.2d 485 (Tex. Civ.App.–Corpus Christi 1979, no writ). It

**2.** Unless otherwise indicated the emphases are ours.

is well settled that a party is not entitled to have the identical controlling factual issue placed before the jury in two or more forms. *Pickens v. Harrison*, 151 Tex. 562, 252 S.W.2d 575, 580 (1952). As stated in *Northeast Texas Motor Lines v. Hodges*, 138 Tex. 280, 158 S.W.2d 487, 489 (1948):

> It has never been the policy of the law to lengthen and complicate special issue charges by requiring the trial courts to give issues that merely submit various phases or other shades of meaning of an [element] already in the charge. It is required only that each controlling issue raised by the pleadings and the evidence be submitted once, fairly, simply and succinctly.

*See also* Tex.R.Civ.P. 277, 279; Pope and Lowerre, *The State of the Special Verdict*, 11 St. Mary's L.J. 1 (1979).

■ Furthermore, the owners did not request the trial court to submit breach of warranty inquiries in 7(B)(1) through 7(B)(6). Nevertheless, the jury's negative answers to 7(B)(1) through 7(B)(5) are tantamount to negative findings on the alleged breach of warranties concerning these matters. *See Valley Datsun v. Martinez, supra*, at 490. Thus, under the circumstances, we conclude that the court did not commit reversible error by refusing the breach of warranty issue requested by the owners. Accordingly, the tenth point of error is overruled.

In summary, our disposition of the owners' points of error one, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen and fifteen is dispositive of this appeal. Accordingly, the judgment is modified as stated in this opinion in the disposition of the eleventh and twelfth points of error, and as modified, the judgment is affirmed.