**OUTDOOR SYSTEMS, INC., Appellant,**

**v.**

**BBE, L.L.C. a/k/a BBE/Arromid, L.L.C., Appellee.**

**No. 11–01–00052–CV.**

Court of Appeals of Texas, Eastland.

March 20, 2003.

Ernest Figari, Parker D. Young, Figari Davenport & Graves, Dallas, for appellant.

Steven Harr, Greg Noschese, LaDawn Conway, Munsch Hardt Kopf & Harr, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and McCALL, J., and McCLOUD, S.J.*

Order

AUSTIN McCLOUD, Senior Justice (Retired).

The motions for rehearing filed by Outdoor Systems, Inc. and BBE, L.L.C. a/k/a BBE/Arromid, L.L.C. are denied. Our former opinion and judgment dated November 14, 2002, are withdrawn, and our opinion and judgment dated March 20, 2003, are substituted therefor.

Opinion

The controlling issue in this case is whether the landlord's written notice of default because of nonpayment of rent was legally sufficient to permit forfeiture of two billboard ground leases. We hold that the notice was insufficient, as a matter of law, because the notice was not specific; the notice was excessive, imprecise, and unreasonable; and the notice required the tenant to perform, in order to cure the default, certain acts not required in the leases.

The trial court, in a nonjury trial, found that the tenant, Outdoor Systems, Inc. (Outdoor Systems), breached the leases and awarded the landlord, BBE, L.L.C. a/k/a BBE/Arromid, L.L.C. (BBE), damages of $80,034.71, title to the two billboards located on the land, and attorney's fees. We reverse and render in part; modify in part; and, as modified, affirm in part.

The significant economic issue between the parties is who owns the two billboards located in Dallas. If the forfeiture was effective, the billboards are owned by the landlord, BBE. If the forfeiture was ineffective, the billboards are owned by the tenant, Outdoor Systems, who has the right under the leases to come upon the land and remove the billboards. In 1998, the city of Dallas enacted a moratorium prohibiting the construction of new billboards within the city limits. The effect of that moratorium significantly increased

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

the value of the two billboards. The trial court found that the value of the billboards as constructed on the land is substantial and that the value of the billboards removed from the land is minimal.

The two leases were dated July 20, 1987, and each provided for a primary term of 10 years. After the expiration of the 10-year term, each lease was automatically renewed for 1-year terms unless terminated in writing by either party 60 days prior to the anniversary date of the respective lease. The anniversary date for each lease was September 1.

In February of 1997, Outdoor Systems acquired the leasehold interest in two tracts of land which contained a billboard on each tract. At that time, the land was owned by Sun NLF Limited Partnership. BBE purchased the land from Sun on or about June 29, 1999. On or about June 28, 1999, Sun sent a letter to its tenant, Outdoor Systems, advising Outdoor Systems that it was selling the land to BBE and that future rent payments should be sent to BBE. Before receiving the letter, Outdoor Systems had mailed the July rent to Sun.

On July 2, 1999, BBE sent a letter (first default notice) to Outdoor Systems stating that future rent payments under the two leases should be mailed to BBE. Upon receipt of the July 2 letter, Tanya Lillie, an employee of Outdoor Systems, contacted Donald L. Woodsmall, BBE's manager, and told Woodsmall that the July rent had been sent to Sun. Because Sun had returned the July rent payment to Outdoor

Systems and because Outdoor Systems only cut rent checks once a month, Lillie asked Woodsmall if Outdoor Systems could reissue the July payment when the rent check for August was sent out. Woodsmall told Lillie that he would get back to her regarding her proposal. Woodsmall did not get back in touch with Lillie.

On July 16, 1999, BBE sent a second letter (second default notice) to Outdoor Systems. This letter stated that Outdoor Systems had miscalculated the amount of rent owed under the leases and demanded that Outdoor Systems perform other acts within ten days or the leases would be in default and BBE would look "to all of our remedies both at law and under the Leases." The July rent, as calculated by Outdoor Systems, was tendered with the August payment.[1] BBE rejected both the July and August payments.

Each lease contained the following provisions:

4. *Rentals.*

(c) It shall be deemed a default by Lessee under the terms of this Agreement if Lessee fails to make any payment to Lessor pursuant to the terms of this Agreement and such failure continues for a period of ten (10) days following receipt by Lessee of written notice from Lessor *specifying such default.*

5. *Termination.*

(a) Lessor may terminate this Agreement at any time following the nonpayment by Lessee of any amounts due to Lessor hereunder, and the failure to pay

---

1. The method used by Outdoor Systems to calculate the rent had been used for several years by a prior tenant. None of the prior landlords had complained. At trial, Outdoor Systems attempted to prove an alleged oral modification between a prior tenant and landlord. The trial court agreed with BBE that Outdoor Systems and prior tenants had not followed the contract in the method used to calculate the rent. The trial court found that the alleged modification was invalid. Outdoor Systems argues that the earlier conduct of BBE and its predecessors waived, as a matter of law, any claimed forfeiture arising from payment of reduced rents. Because we hold that the forfeiture was invalid, it is not necessary that we reach this argument urged by Outdoor Systems. TEX.R.APP.P. 47.1.

such amounts within the applicable cure period set forth in Paragraph 4 above.

(c) Upon termination of this Agreement by Lessee or Lessor, for any reason *other than default by Lessee,* Lessee shall have the right for a period of sixty (60) days following the date of such termination to remove the Board and any other associated facilities which had previously been installed by Lessee in connection with the operation of the Board. Lessor shall cooperate with Lessee in order to accomplish such removal. *In the event of default by Lessee Board shall become sole property of Lessor and Lessee has no further recourse or claim to the board or against Lessor.* (Emphasis added)

The July 2, 1999, letter from Donald Woodsmall to Outdoor Systems provides in part:

You recently received a letter from STERLING PACIFIC MANAGEMENT SERVICES, INC., the Asset Manager for Sun NLF Limited Partnership, notifying you that they have sold the Property to BBE, l.l.c., and that the July 1, 1999 payments under the Leases should be paid to BBE. Please note that the payments should be made payable and sent to:

BBE, l.l.c.

P.O. Box 690348

San Antonio, Texas 78269

(301) 6957505 FAX (301) 6957510

*We have not yet received the July 1, 1999 payments.* (Emphasis added)

The July 16, 1999, letter from Donald Woodsmall provides in part:

Dear Ms. Lillie:

In reviewing the payments made under the Leases in the last year, it is apparent that Outdoor Systems has been mis-calculating how the payments are to work. The payments are not to fluctuate on a monthly basis, but a new minimum is to be set each year based on 25% of the previous year's gross billings. Outdoor Systems method miscalculates the Lease payments owing and results in an understatement of the true payments. *The arrearages for the last ten months alone equal $878.50. The amount of the arrearages prior to the last ten months is unknown to us as we do not have the information needed to calculate those payments. Inasmuch as BBE, l.l.c. has succeeded to all of the rights, title and interest of the previous Property owner in and to the Leases, these arrearages under the Leases belong to BBE. I would appreciate receiving within ten days from the date hereof both the $878.50 relating to the last ten months and the total arrearages from the inception of the Leases up to the last ten months; failing which, Outdoor Systems will be in default under the Leases and we will look to all of our remedies both at law and under the Leases.*

*We would also ask that you forward to us your advertising contracts from the inception of the Leases to the present so that we may audit and calculate the percentage payments that are owed throughout the term of the Leases.* We are preserving all of our rights with regard to the previous underpayments of rent until such audit has been performed. (Emphasis added)

Under the leases, in order for there to be a "default" for nonpayment of rent, BBE was required to give Outdoor Systems written notice "specifying such default."

Forfeiture is a harsh and punitive remedy, and it is not favored in law or equity. 41 TEX. JUR. 3D *Forfeitures and Penalties* § 5 (1998). Some of the appropriate

rules regarding forfeiture pursuant to a contract are discussed in 41 TEX. JUR. 3D *Forfeitures and Penalties* § 6 (1998):

> Forfeiture under a contract will not be declared unless the language of the contract can be construed in no other way. A forfeiture will be avoided when another reasonable reading of the contract exists.

> The right to a forfeiture may be found only in language that is plain, clear, and unequivocal. Thus, when forfeitures are intended to take place upon the happening of certain events, cause of forfeiture is to be plainly and clearly stated, and the time definitely fixed. Where grounds for a forfeiture are specified in a contract, a forfeiture cannot be had on other grounds.

The court in *Wendlandt v. Sommers Drug Stores Company*, 551 S.W.2d 488 (Tex.Civ.App.-Austin 1977, no writ), discussed the general rules regarding notice:

> Notice of default in payment of rent must convey a message that the notifier is initiating steps necessary to finally assert his legal rights that if default is not cured, he may take final action as provided in the contract. In this respect see: *Moore v. Richfield Oil Corp.*, 233 Or. 39, 377 P.2d 32 (1962); *Hocker v. Heins*, 231 N.Y.S.2d 481 (Sup.Ct. of Suffolk County, N.Y.1962).... The cases in this State hold that a landlord cannot forfeit the lease of his tenant for failure to comply with the provisions without first making demand upon the tenant for performance. *Gray v. Vogelsang*, 236 S.W. 122 (Tex.Civ.App.1921, no writ); *Shepherd v. Sorrells*, 182 S.W.2d 1009 (Tex.Civ.App.1944, no writ); *Conn v. Southern Pine Lumber Co.*, 11 S.W.2d 199 (Tex.Civ.App.1928, no writ).

See 41 TEX. JUR.3d *Forfeitures and Penalties* § 16 (1998).

Regarding the sufficiency of a demand, it is stated in 51C C.J.S. *Landlord & Tenant* § 114(2)(b) (1968):

> Where forfeiture of a lease is dependent on the making of a demand for performance, the demand must be a proper, specific, and reasonable one.

The demand for rent must not be excessive. It is stated in 49 AM. JUR.2d *Landlord and Tenant* § 303 (1995):

> As a general rule, the demand for rent, for the nonpayment of which the lessor may declare the lease forfeited, must be for the precise amount of rent due, and if an excessive amount is demanded the demand will be ineffectual.

 The notice by BBE of default and the demand upon Outdoor Systems to pay the rent pursuant to the leases was necessary in order to provide Outdoor Systems an opportunity to cure the default prior to the harsh consequences of forfeiture. *Cf. Ogden v. Gibraltar Savings Association*, 640 S.W.2d 232, 234 (Tex.1982).

The July 2 letter made no demand. It was merely a reminder that the July rent had not been paid. The July 16 letter demanded too much. The demand was not specific but was excessive, unreasonable, imprecise, and required Outdoor Systems to perform acts not required by the leases.

 The July 16 letter demanded that Outdoor Systems, within 10 days, pay to BBE an unspecified amount based upon "total arrearages from the inception of the Leases." The leases were signed by the original tenant and landlord in 1987. Lillie, an employee of Outdoor Systems, testified that she was responsible for calculating and paying the rent on the billboards. Lillie testified that, assuming there was an arrearage owed on the two leases, neither she nor anyone else at Outdoor Systems had the information or ability to calculate, within the 10-day period, any arrearage

that might have been owed back to 1987. The trial court, in its findings of fact, found that Outdoor Systems ignored the July 16 demand from BBE and that Outdoor Systems made no effort to calculate or pay any rental arrearages. We look at the notice of default that was sent to Outdoor Systems by BBE to determine if the notice was sufficient. The response of Outdoor Systems does not determine the legal sufficiency of the notice. The demand letter purported to address both of the leases; however, it failed to segregate the amount demanded to cure the alleged default under each agreement. Furthermore, BBE demanded that Outdoor Systems provide advertising contracts from the inception of the leases so that BBE could audit and calculate the percentage payments that were owed throughout the term of the leases.

■ Outdoor Systems was not personally liable for any unpaid rent prior to the time it became the tenant under the leases in February 1997. See *Regency Advantage Limited Partnership v. Bingo Idea-Watauga, Inc.*, 936 S.W.2d 275 (Tex.1996); 49 AM. JUR.2d *Landlord and Tenant* § 1145 (1995). There is no requirement or obligation in the leases on the part of the tenant to provide the landlord with advertising contracts relating to the billboards. A landlord cannot base a forfeiture on the breach of an obligation that does not exist in the lease. See *Deauville Corporation v. Garden Suburbs Golf and Country Club*, 164 F.2d 430 (5th Cir.1947), *cert. den'd*, 333 U.S. 881, 68 S.Ct. 912, 92 L.Ed. 1156 (1948).

Both parties discuss *Rohrt v. Kelley Manufacturing Company*, 162 Tex. 534, 349 S.W.2d 95 (1961). The issues involved in this appeal were not discussed in *Rohrt*. There, the court observed that the effect of the default notice was not "disputed."

Neither the July 2 letter nor the July 16 letter was a sufficient notice of default. On August 11, 1999, BBE sent a "Notice of Termination" to Outdoor Systems purporting to terminate both leases and to declare that title to the billboards had "automatically" vested in BBE. We hold that the notice of termination was ineffective because it was not preceded by a proper notice of default. See *Ogden v. Gibraltar Savings Association*, supra.

Outdoor Systems refused to vacate the land and continued to operate the billboards and tender monthly rental payments to BBE who rejected each of the tendered rent payments. On May 12, 2000, BBE sent a letter to Outdoor Systems stating that the leases had terminated because of numerous defaults by Outdoor Systems. However, to remove any misunderstanding, BBE notified Outdoor Systems that, pursuant to Paragraph 3(b) of the leases, the May 12 letter constituted Outdoor Systems's 60–day notice of termination. The letter stated, "The Leases shall not renew but shall cease and expire on the anniversary date thereof, which can in no event be later than September 1, 2000." Outdoor Systems agrees that this was a proper termination of the leases between the parties.

Outdoor Systems vacated the land prior to the September 1, 2000, anniversary date and advised BBE that it was prepared to remove the billboards. BBE objected to the removal of the billboards and refused to permit Outdoor Systems to remove the structures.

We reverse the trial court's judgment awarding title to the two billboards to BBE, and we render judgment that the two billboards located on the separate tracts of real property described in the judgment as Exhibits A and B are owned by Outdoor Systems and that Outdoor Sys-

tems has the right to remove the two billboards.

In its conclusions of law, the trial court found that the leases terminated on August 11, 1999, and that Outdoor Systems violated TEX. CIV. PRAC. & REM. CODE ANN. § 80.002 et seq. (Vernon 1997 & Supp.2002) by remaining in possession after that date and by failing to remove advertising from the billboards after August 11. The court assessed trespass damages against Outdoor Systems in the amount of $75,604.58. We reverse this award and render judgment that Outdoor Systems is not liable to BBE for trespass damages because the leases did not terminate on August 11. The termination letter was ineffective because it was based upon an insufficient notice of default.

As part of its damages award, the trial court found that Outdoor Systems was liable to BBE for unpaid rent of $4,430.13. Outdoor Systems does not challenge this finding. We, therefore, will modify the trial court's judgment to provide that BBE recover judgment against Outdoor Systems in the amount of $4,430.13.

 The trial court awarded BBE attorney's fees of $75,000.00 through trial and additional attorney's fees in the event of an appeal. Outdoor Systems contends that BBE is not entitled to attorney's fees because BBE's demand was excessive. A creditor who makes an excessive demand upon a debtor is not entitled to attorney's fees for subsequent litigation required to recover the debt. *Collingsworth v. King*, 155 Tex. 93, 283 S.W.2d 30 (1955); *Ingham v. Harrison*, 148 Tex. 380, 224 S.W.2d 1019 (1949). The court in *Findlay v. Cave*, 611 S.W.2d 57 (Tex.1981), observed that *Collingsworth* and *Ingham* involved liquidated sums. However, the court stated that a party could make an excessive demand for an unliquidated sum. The court said:

Certainly one can conceive of circumstances in which a demand for·an unliquidated sum would have to be characterized as excessive, and attorney's fees denied.

The *Findlay* court also held:

[W]e do not find a sufficient level of unreasonableness or bad faith to warrant finding excessive demand as a matter of law.

We find in the present case, as a matter of law, that the demand made by BBE in the July 16 letter was an excessive demand for an unliquidated sum and, thus, discharged any liability for fees expended thereafter.

BBE's demand was not for a specific liquidated sum. As pointed out earlier in this opinion, the July 16 letter demanded that Outdoor Systems, within 10 days, pay BBE an unspecified amount based upon "total arrearages from the inception of the Leases." The original lessor and lessee executed the leases in 1987. Outdoor Systems acquired the leasehold interest in 1997. BBE demanded that Outdoor Systems provide advertising contracts from the inception of the leases. The leases were forfeited by the trial court, and title to the billboards was awarded to BBE. We have reversed that finding. The trial court found that Outdoor Systems was a trespasser because it failed to comply with the demand and awarded BBE $75,604.58. We have reversed that finding. Under our decision, BBE has a judgment against Outdoor Systems for $4,430.13. Unlike the court in *Findlay*, we do find a sufficient "level of unreasonableness ... to warrant finding excessive demand as a matter of law."

 BBE argues that Outdoor Systems cannot rely upon the defense of "excessive demand" because Outdoor Systems failed to expressly plead the defense. See *Tut-*

*hill v. Southwestern Public Service Company,* 614 S.W.2d 205, 212 (Tex.Civ.App.-Amarillo 1981, writ ref'd n.r.e.). The record in this case reveals that, after the evidence closed and before judgment was entered, the parties filed trial briefs. In Paragraph IV of BBE's trial brief submitted to the trial court, BBE stated:

> ***Excessive Demand***—A creditor who makes an excessive demand upon a debtor is not entitled to attorneys' fees for subsequent litigation. An excessive demand is one which is manifestly unreasonable, or made in bad faith. *Findlay v. Cave,* 611 S.W.2d 57, 58 (Tex. 1981). Where the demand in *Findlay* was for more than a jury awarded the close of the trial, the Court found that was some evidence of excessive demand, but not enough to support the "manifestly unreasonable" or "bad faith" standard. The court noted that the cases on excessive demand occurred where the amount in controversy was liquidated and the creditor made demand for more than it was entitled. Clearly the testimony in this case shows that BBE's demand for a specific sum of money was for less than the amount due and that its further demand was for an amount that could reasonably be thought to be within the knowledge and control of Outdoor Systems. There is no authority to support that an excessive demand is otherwise void or vitiated.

BBE did not argue in the trial court that Outdoor Systems had failed to sufficiently plead the defense. On the contrary, it is apparent that the issue was before the court, as evidenced by BBE's briefing and argument presented to the trial court. We hold that Outdoor Systems's "excessive de-

mand" defense to any liability for attorney's fees was tried by implied consent. See *City of Los Fresnos v. Gonzalez,* 848 S.W.2d 910 (Tex.App.-Corpus Christi 1993, no writ). The award of attorney's fees, both trial and appellate, to BBE is reversed; and we render judgment that Outdoor Systems is not responsible for attorney's fees.

■ In its brief, under issues presented, Outdoor Systems states:

> [T]his case should be remanded for *consideration* of Outdoor Systems' counterclaims, including its claim for conversion of the billboards. (Emphasis added)

Outdoor Systems argues that, because the trial court erroneously concluded that BBE's termination complied with the leases, the trial court improperly failed to consider Outdoor Systems's counterclaims. This was a conventional nonjury trial on the merits. The judgment provides that "all relief not expressly granted herein is denied." The trial court considered the counterclaims, and they were denied. We overrule Outdoor Systems's request that its counterclaims be remanded to the trial court for consideration.

■ Finally, Outdoor Systems seeks a remand of this matter to the trial court in order to seek the recovery of the billboards pursuant to our holding.[2] It would appear that Outdoor Systems has an avenue for seeking the recovery of the billboards without the case being remanded to the trial court. Texas courts have long held that a party obtaining any advantage or benefit through a trial court's judgment that is later reversed must return the benefit to the other party. *Peticolas v. Car-*

---

2. A supplemental clerk's record has been filed in this appeal which details events that transpired after the entry of the trial court's judgment on November 3, 2000. The supplemental clerk's record reflects that BBE conveyed

title to the two billboards and the underlying real property to Sterling Samuel, Ltd. in December of 2000. Sterling then sold the billboards to Lamar Whiteco Outdoor Corporation for $675,000.00.

*penter,* 53 Tex. 23 (1880); *Currie v. Drake,* 550 S.W.2d 736, 739 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.); *Salgo v. Hoffman,* 521 S.W.2d 922, 925 (Tex.Civ.App.-Dallas 1975, no writ). As noted in *Salgo v. Hoffman,* supra at 925:

> When an erroneous judgment has not been suspended pending appeal, and the relief granted has already been obtained, the successful appellant may reclaim what he has been deprived of, and if his demands are wrongfully resisted, he is entitled to the assistance of the courts.

The assistance which the successful appellant is entitled to seek from the courts is characterized as the right of restitution. *Currie v. Drake,* supra at 740 ("The right of restitution of what one has lost by the enforcement of a judgment subsequently reversed has long been recognized.") A party may have restitution upon its own motion after an evidentiary hearing establishing with certainty what he has lost. *Currie v. Drake,* supra at 740. Furthermore, the successful appellant is entitled to seek restitution in the same proceeding without resorting to a new suit. *Cleveland v. Tufts,* 69 Tex. 580, 7 S.W. 72, 74 (1888); *Peticolas v. Carpenter,* supra; *Baca v. Hoover, Bax & Shearer,* 823 S.W.2d 734, 739 (Tex.App.-Houston [14th Dist.] 1992, writ den'd); *Currie v. Drake,* supra at 740–41. We, therefore, decline Outdoor Systems's request for a remand of this case in light of the existing procedure for Outdoor Systems to seek restitution after our judgment becomes final by the issuance of our mandate. See TEX. R.APP.P. 18.1(a).

The judgment of the trial court is reversed and rendered in part; modified in part; and, as modified, affirmed in part.