Opinion filed October 31, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00307-CV

_____

**ROY LONG; ERNESTINE LONG; GREGORY HOLLINGSHEAD, INDIVIDUALLY AND AS NEXT FRIEND OF KELCEY HOLLINGSHEAD, KLAYTON HOLLINGSHEAD, AND KANYON HOLLINGSHEAD; KELCEY HOLLINGSHEAD; HALL & HALL, L.L.P.; FORBES & FORBES; AND BURT L. BURNETT, INDIVIDUALLY AND ON BEHALF OF THE MINOR HOLLINGSHEAD CHILDREN, Appellants**
**V.**
**RICHARD ELLIOTT AND WEST TEXAS CENTERS FOR MHMR, Appellees**

**On Appeal from the 32nd District Court**
**Nolan County, Texas**
**Trial Court Cause No. 18,701**

# O P I N I O N

This case is a wrongful death and survival action. It arose from an automobile accident in which Stacey Hollingshead was tragically killed. The trial court entered a final judgment in this case on March 20, 2009. Richard Elliott and

West Texas Centers for MHMR (MHMR) appealed from the judgment. We reversed the judgment of the trial court and remanded the case for further proceedings consistent with our opinion. *See Elliott v. Hollingshead*, 327 S.W.3d 824 (Tex. App.—Eastland 2010, no pet.). We will refer to the earlier appeal as *Elliott I*.

Following remand, the trial court held a hearing and, later, entered a final judgment on remand. The following parties have appealed from the final judgment on remand: Roy Long; Ernestine Long; Gregory Hollingshead, individually and as next friend of Kelcey Hollingshead, Klayton Hollingshead, and Kanyon Hollingshead; Kelcey Hollingshead; Hall & Hall, L.L.P.; Forbes & Forbes; and Burt L. Burnett, individually and on behalf of the minor Hollingshead children. We modify and affirm.

*Background*

At the time of the accident, Stacey was in the course and scope of her employment with MHMR. Stacey, who had formerly been married to Gregory Hollingshead, was survived by her minor children: Kelcey, Klayton, and Kanyon Hollingshead. Stacey's employer, MHMR, was a self-insured governmental entity for workers' compensation purposes, and it was a member of a risk management fund. After Stacey died, the risk management fund began paying weekly workers' compensation death benefits to Stacey's children.

As a result of Stacey's death, Appellant Gregory Hollingshead, individually and as next friend and guardian of the person of Kelcey, Klayton, and Kanyon, filed a wrongful death suit against three defendants. Appellee Elliott, an attorney, represented Hollingshead and the minor plaintiffs in the wrongful death suit. Roy Long and Ernestine Long, Stacey's parents, intervened in the wrongful death suit. They were represented by the law firm of Appellant Forbes & Forbes. Later, Appellant Hall & Hall, L.L.P., a law firm, joined the Forbes firm in the

representation of the Longs. Appellee MHMR, represented by Michael J. Donovan, intervened in the suit. MHMR sought reimbursement for the workers' compensation benefits that had been paid to the minor plaintiffs.

The Longs added additional defendants as parties in an amended plea in intervention. The Longs, in the capacity of representatives of Stacey's estate, also added a survival action on behalf of the estate. Hollingshead, acting as next friend and guardian of the minor plaintiffs, and MHMR also asserted claims against the additional defendants. Upon motion by the Longs, the trial court realigned them as plaintiffs. The trial court also appointed Burt L. Burnett as attorney ad litem for the minor plaintiffs.

Hollingshead and the Longs agreed to settle the claims against all defendants for a total of $4,016,461.99. On June 24, 2008, the trial court held a settlement hearing. At the hearing, MHMR sought reimbursement for workers' compensation benefits paid to the minor plaintiffs and funeral expenses paid that totaled $59,377.40. The attorney ad litem and the Longs' counsel raised questions about Elliott's representation of the minor plaintiffs. After hearing evidence and argument of counsel, the trial court approved the settlement. The trial court also approved the claims of the Forbes firm and the Hall firm for attorney's fees and costs. The trial court approved the total amount of Elliott's attorney's fees but also ordered that $200,000 of those fees be paid into the registry of the court pending a possible appeal of the case. The trial court concluded that Elliott's actions had caused the attorney ad litem to incur additional attorney's fees. Accordingly, the trial court found that $15,000 of Elliott's attorney's fees should be paid toward the attorney ad litem's total approved fee of $40,000.

On July 21, 2008, the trial court entered a judgment approving the settlement. In the judgment, the trial court ordered that the amount of $259,377.40 be paid into the registry of the court. This amount consisted of $200,000 of

3

Elliot's attorney's fees and $59,377.40 that MHMR sought to recover on its subrogation claim. The trial court ordered that the funds were "to be disbursed on further order of the Court as it relates to any additional attorney's fees that may be owed Richard Elliott and any funds that may or may not be owed to [MHMR]." Hollingshead terminated Elliott from representing him and the minor plaintiffs. Later, Hollingshead hired the Hall firm to represent him and the minor plaintiffs. Elliott filed a plea in intervention in which he sought to recover the part of his attorney's fees that had been put into the registry of the court. Elliott and MHMR filed notices of appeal from the judgment. However, because the judgment did not dispose of all parties and claims, it was not a final, appealable judgment, and we did not have jurisdiction to entertain the appeal at that time.

On February 27, 2009, the trial court held another hearing. On March 20, 2009, the trial court entered a final judgment approving the settlement. In the judgment, the trial court allocated 75% of the settlement proceeds to the survival claims brought on behalf of Stacey's estate and 25% of the settlement proceeds to the wrongful death claims. The trial court found that MHMR had paid $59,377.40 in past workers' compensation benefits to the minor plaintiffs. The trial court reduced the $59,377.40 amount by one-third for payment of attorney's fees of $19,792.47 to the plaintiffs' attorneys and by a pro rata share of expenses of $3,574.71 that it allocated to MHMR's claim for reimbursement of past benefits paid. Thus, the trial court concluded that MHMR was entitled to payment out of the settlement proceeds on its subrogation claim for payment of past benefits in the amount of $36,010.22.

In the judgment, the trial court determined MHMR's advance against future benefit payments to the minor plaintiffs, which is also known as a "payment holiday." In calculating the payment holiday, the trial court stated that MHMR had subrogation rights "only in the net recovery by [the minor plaintiffs] for their

4

wrongful death claims."  As explained in our opinion in *Elliott I*, the trial court concluded that MHMR had a payment holiday in the amount of $244,382.97. *Elliott I*, 327 S.W.3d at 831.

In its judgment, the trial court found that Elliott breached the fiduciary duties that he owed the minor plaintiffs in representing them in this case.  Based on this finding, the trial court found that good cause existed to require Elliott to forfeit $100,000 of his attorney's fees to the minor plaintiffs and to pay $15,000 of the attorney ad litem's fees.

The trial court ordered the district clerk to pay the funds that were in the registry of the court as follows: (1) $100,000 to Elliott; (2) $36,010.22 to MHMR; and (3) $143,460.55 to Stacey's estate.  The trial court ordered that the funds paid to the estate were to be used solely for the benefit of the minor plaintiffs.  The payment to the estate included, among other funds, Elliott's forfeited attorney's fees in the amount of $100,000, attorney's fees out of MHMR's subrogation interest in the amount of $19,792.47, and a pro rata share of costs out of MHMR's subrogation recovery in the amount of $3,574.71.

In *Elliott I*, we reversed the trial court's award of attorney's fees of $19,792.47 out of MHMR's subrogation recovery to the plaintiffs' attorneys and remanded that issue to the trial court for further proceedings.  *Elliott I*, 327 S.W.3d at 836.  After reviewing the evidence, we concluded that the trial court's allocation of 75% of the settlement proceeds to the survival claims, which amounted to more than $3,000,000, was not supported by the evidence and that, "[a]t most, a minimal allocation of the settlement proceeds to the survival claims may have been justified, such as an award of funeral expenses."  *Id.* at 834. Thus, we also remanded the issue of the allocation of the settlement proceeds to the trial court for determination consistent with our opinion.  *Id.* at 834–35.  Also, we concluded that the trial court erred by requiring Elliott to forfeit part of his attorney's fees to the

minor plaintiffs because Hollingshead had not alleged a fee forfeiture claim on behalf of the minor plaintiffs against Elliott. *Id.* at 837–38. Based on the absence of pleadings, we held that the trial court abused its discretion by finding that Elliott breached his fiduciary duties to the minor plaintiffs and by ordering that $100,000 of his attorney's fees be forfeited. *Id.* at 838. For the same reason, we concluded that the trial court erred by requiring Elliott to pay any part of the attorney ad litem's fees. *Id.*

After remand, the trial court held a hearing and then, on July 26, 2011, entered its final judgment on remand. In the judgment, the trial court ordered that MHMR was entitled to recover its full subrogation interest in the amount of $59,377.40 for past benefits paid. The trial court did not award any attorney's fees to the plaintiffs' attorneys out of MHMR's subrogation recovery. The trial court allocated 99.5% of the settlement proceeds to the wrongful death claims and 0.5% of the settlement proceeds to the survival claims. Based on its allocation, the trial court ordered that MHMR would receive an advance credit against future benefit payments, or a "payment holiday," in the amount of $2,040,622.60. The trial court also ordered, among other things, that Elliott recover $100,000, which represented the amount of attorney's fees that the trial court had earlier required Elliott to forfeit, from Stacey's estate and that the attorney ad litem pay Elliott $15,000, which represented the amount of attorney ad litem fees that the trial court had earlier required Elliott to pay.

### Issues on Appeal

Appellants present fifteen issues for review. In their issues, Appellants contend that the trial court erred as follows: by failing to award attorney's fees to the plaintiffs' attorneys out of MHMR's subrogation recovery (Issues One, Two, and Three); by failing to require MHMR to pay its pro rata share of costs and expenses (Issue Four); by allocating 99.5% of the settlement proceeds to the

wrongful death claims and 0.5% of the proceeds to the survival claims (Issues Five, Six, and Seven); by rendering Appellants Roy Long, Ernestine Long, and Gregory Hollingshead, in their individual capacities, as well as the Hall firm and the Forbes firm, jointly and severally liable for funds ordered to be paid to MHMR in the final judgment on remand (Issues Eight, Nine, Ten, and Eleven); by dismissing with prejudice all claims that were or that could have been asserted by the parties (Issue Twelve); and by denying the minor plaintiffs leave to amend their pleadings to assert claims against Elliott (Issues Thirteen, Fourteen, Fifteen).

The attorney ad litem presents three issues for review. In his issues, the attorney ad litem contends that the trial court erred as follows: by ordering that all causes of action that were asserted or that could have been asserted by the parties were dismissed with prejudice (Issue One); by denying the plaintiffs' motion for leave of court to amend their pleadings and to join Elliott into the cause (Issue One); by apportioning the settlement proceeds and ordering a credit against future workers' compensation benefit payments in a manner that was unsupported by evidence (Issue Two); and by ordering an amount of, the propriety of, and the payment source for attorney's fees in a manner that was unsupported by evidence (Issue Three).

*Failure to Award Attorney's Fees to Plaintiffs out of MHMR's Recovery*

In the final judgment on remand, the trial court awarded MHMR a subrogation recovery of $59,377.40. The trial court's judgment did not include an award of any attorney's fees related to MHMR's subrogation recovery. In their first three issues, Appellants contend that the trial court erred by failing to award attorney's fees out of MHMR's subrogation recovery to the plaintiffs. Specifically, Appellants contend in their first two issues that the evidence was legally and factually insufficient to support an award of all attorney's fees to MHMR and that, therefore, the trial court abused its discretion in its award of

7

attorney's fees. In their third issue, Appellants contend that the trial court erred by failing to consider evidence that related to an award of attorney's fees under Section 417.003(c).

In *Elliott I*, we concluded that Section 417.003(c) of the Labor Code applied to an award of attorney's fees out of MHMR's subrogation recovery. *Elliott I*, 327 S.W.3d at 836; *see* TEX. LAB. CODE ANN. § 417.003(c) (West 2006). Section 417.003(c) provides that, "[i]f an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery." In apportioning the attorney's fees award, "the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service." LAB. § 417.003(c).

We review a trial court's award of attorney's fees under Section 417.003(c) for an abuse of discretion. *Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 446 (Tex. App.—Dallas 1994, writ denied). The trial court conducted the settlement hearing before it entered the judgment that was the subject of *Elliott I*. The Hall firm and the Forbes firm represented the Longs at the settlement hearing. As detailed in *Elliott I*, the Hall firm and the Forbes firm opposed any recovery by MHMR on its subrogation claim. *Elliott I*, 327 S.W.3d at 836. The Hall firm began representing the minor plaintiffs after the settlement hearing.

In *Elliott I*, we stated that, "[o]n remand, the trial court may fully reconsider the attorney's fee issue under Section 417.003(c)." *Elliott I*, 327 S.W.3d at 836. Our instructions did not require the trial court to hear additional evidence on the issue. After remand, the trial court conducted a hearing to consider the issue. The trial court refused the plaintiffs' requests to present additional evidence on the attorney's fee issue. No additional evidence was necessary for the trial court to decide the attorney's fee issue under Section 417.003(c) because the record

8

showed that the Hall firm and the Forbes firm opposed MHMR's recovery. Based on that opposition, the trial court could have reasonably concluded that no benefit accrued to MHMR as a result of the services of the Hall firm and the Forbes firm. *See* LAB. § 417.003(c). We conclude that the trial court did not abuse its discretion by failing to award attorney's fees to the Hall firm or the Forbes firm out of MHMR's subrogation recovery. Appellants' first three issues are overruled.

*Failure to Require MHMR to Pay Its Pro Rata Share of Costs and Expenses*

Appellants contend in their fourth issue that the trial court erred by failing to order MHMR to pay its pro rata share of case costs and expenses. Appellants rely on Section 417.003(a)(2) of the Labor Code to support their contention. Section 417.003(a) applies in cases in which an insurance carrier's interest is not actively represented by an attorney. LAB. § 417.003(a). In such cases, in the absence of an agreement between the claimant's attorney and the carrier, the trial court must award to the claimant's attorney out of the carrier's recovery the carrier's proportionate share of expenses. *Id.* § 417.003(a)(2).

*In Elliott I*, we held that Section 417.003(a) does not apply to this case but, instead, that Section 417.003(c) applies. *Elliott I*, 327 S.W.3d at 836. Section 417.003(c) does not require the trial court to award a pro rata share of expenses out of the carrier's recovery to the claimant's attorney. Therefore, we conclude that the trial court did not abuse its discretion by failing to order MHMR to pay a pro rata share of expenses out of its subrogation recovery to the minor plaintiffs' attorneys. Appellants' fourth issue is overruled.

*Joint and Several Liability on MHMR's Recovery*

In the final judgment on remand, the trial court ordered that MHMR was entitled to recover its full subrogation interest in the amount of $59,377.40 for past benefits it had paid the minor plaintiffs. The amount of $36,010.22 had previously

been paid to MHMR from the funds that were in the registry of the court. The trial court ordered as follows:

> Therefore, Intervenor MHMR shall recover the additional amount of $23,367.18 from, jointly and severally, the Estate of Stacey Hollingshead; Plaintiffs GREGORY HOLLINGSHEAD, Individually and as Next Friend and Guardian of the Person of KELCEY HOLLINGSHEAD, KLAYTON HOLLINGSHEAD and KANYON HOLLINGSHEAD, Minors; ROY LONG and ERNESTINE LONG, Individually and as Representatives of the Estate of STACEY HOLLINGSHEAD, and as additional Next Friends of KELCEY HOLLINGSHEAD, KLAYTON HOLLINGSHEAD and KANYON HOLLINGSHEAD, Minors; Hall & Hall . . . ; and Forbes & Forbes.

The amount of $23,367.18, which had previously been paid to Stacey's estate from the funds that were in the registry of the court, was attributable to the trial court's earlier award of attorney's fees of $19,792.47 out of MHMR's subrogation recovery to the plaintiffs' attorneys and to the trial court's earlier allocation of $3,574.71 to MHMR as its pro rata share of expenses.

Appellants contend in their eighth through eleventh issues that the trial court erred by holding Roy Long, Ernestine Long, and Hollingshead, in their individual capacities, and the Hall and Forbes firms jointly and severally liable for the funds ordered to be paid to MHMR in the final judgment on remand. In their eighth issue, Appellants contend that "no pleadings, notice, or trial occurred" that would have allowed the trial court to impose joint and several liability on these parties. In their ninth and tenth issues, Appellants contend that the evidence was legally and factually insufficient to impose joint and several liability. In their eleventh issue, Appellants contend that the trial court erred by imposing joint and several liability because parties that were necessary to the determination of the issue were not before the trial court.

MHMR's subrogation rights attached to the part of the settlement proceeds

that the minor plaintiffs recovered on their wrongful death claims. *Elliott I*, 327 S.W.3d at 833; *Tex. Workers' Comp. Ins. Fund v. Alcorta*, 989 S.W.2d 849, 851–52 (Tex. App.—San Antonio 1999, no pet.). Under Texas law, when a workers' compensation beneficiary has received workers' compensation benefits, the first money paid to or recovered by the beneficiary in a third-party action against a tortfeasor belongs to the workers' compensation carrier, and until the carrier is paid in full, the beneficiary has no right to any of the funds. *Tex. Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 33 (Tex. 2008); *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 530 (Tex. 2002). Any recovery from a third party by the beneficiary is burdened by the carrier's subrogation rights to the extent of any workers' compensation payments made. *Baker*, 87 S.W.3d at 530. If there is a recovery by a beneficiary against a third party, "rather than the [beneficiary] owning the money and being forced to disgorge it, the carrier is first entitled to the money up to the total amount of benefits it has paid." *Ledbetter*, 251 S.W.3d at 35 (quoting *Baker*, 87 S.W.3d at 530). Until the carrier is paid in full, the beneficiary or his or her representatives have no right to any of the funds recovered from the third party. *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 924 (Tex. 1966).

In this case, the settlement proceeds totaled over $4,000,000. In the final judgment on remand, the trial court allocated about $3,980,000 of the settlement proceeds to the wrongful death claims. We have affirmed that allocation below. The evidence at the settlement hearing showed that the minor plaintiffs received $2,100,000 of the settlement proceeds in connection with the settlement of their wrongful death claims. Those proceeds were used to purchase annuities for the benefit of the minor plaintiffs before the trial court approved the settlement. The evidence at the settlement hearing also showed that the Hall firm received about $400,000 in legal fees and that the Forbes firm received about $450,000 in legal fees from the settlement proceeds.

11

MHMR was entitled to the first money recovered by the minor plaintiffs on their wrongful death claims. *Ledbetter*, 251 S.W.3d at 33. Until MHMR received payment in full of its subrogation interest, neither the minor plaintiffs nor their attorneys were entitled to receive any funds from the settlement proceeds. *Capitol Aggregates*, 408 S.W.2d at 924. MHMR filed a plea in intervention in which it sought reimbursement for the workers' compensation benefits that had been paid to the minor plaintiffs. MHMR's plea provided notice of its subrogation claim to the other parties and their attorneys. With notice of MHMR's claim, the Hall firm and the Forbes firm received substantial amounts of the settlement proceeds that related to the minor plaintiffs' wrongful death claims. Based on the evidence, we conclude that the trial court did not abuse its discretion by imposing joint and several liability for the funds ordered to be paid to MHMR on the following parties: (1) Hollingshead, in his capacities of guardian and next friend of the minor plaintiffs; (2) Roy Long and Ernestine Long, in their capacities as representatives of Stacey's estate and as additional next friends of the minor plaintiffs, (3) the Hall firm, and (4) the Forbes firm.

The Longs were not workers' compensation beneficiaries. Thus, MHMR did not have a subrogation right in any recovery by the Longs on their wrongful death claims. *Elliott I*, 327 S.W.3d at 833. The record does not contain evidence that the Longs or Hollingshead in their individual capacities received any of the settlement proceeds that were attributable to the minor plaintiffs' wrongful death claims. In the absence of such evidence, we conclude that the trial court erred by holding Roy Long, Ernestine Long, and Hollingshead, in their individual capacities, jointly and severally liable for the amount ordered to be paid to MHMR in the final judgment on remand.

Appellants' ninth and tenth issues are sustained to the extent Appellants complain that the trial court erred by imposing joint and several liability on Roy

Long, Ernestine Long, and Hollingshead, in their individual capacities. Appellants' ninth and tenth issues are otherwise overruled. Appellants' eighth and eleventh issues are overruled.

*Allocation of Settlement Proceeds to Wrongful Death and Survival Claims*

In *Elliott I*, we concluded that the trial court's decision to allocate 75% of the settlement proceeds to the survival claims was not supported by the evidence. *Elliott I*, 327 S.W.3d at 834. On remand, the trial court allocated 99.5% of the settlement proceeds to the wrongful death claims and 0.5% of the proceeds to the survival claims. Thus, the trial court allocated about $3,980,000 to the wrongful death claims and about $20,000 to the survival claims. Based on this allocation, the trial court ordered that MHMR was entitled to receive an advance credit against future benefit payments in the amount of $2,040,622.20.

Appellants challenge the trial court's allocation of the settlement proceeds in their fifth, sixth, and seventh issues. In their fifth and sixth issues, Appellants contend that there was legally and factually insufficient evidence to support the allocation of 99.5% of the settlement proceeds to the wrongful death claims. In their seventh issue, Appellants contend that the trial court erred by refusing to conduct an evidentiary hearing after remand on the allocation of settlement funds between the wrongful death and survival claims. The attorney ad litem contends in his second issue that the trial court erred by adjudging an allocation of proceeds and a credit against future benefits in manners that were unsupported by evidence.

We noted in *Elliott I* that there was no evidence at the June 24, 2008 settlement hearing that Stacey suffered before her death. *Elliott I*, 327 S.W.3d at 834. Based on the evidence, it appeared that Stacey died instantly on impact. There was also no evidence that Stacey was aware of the impending accident. Even if Stacey had been aware for a split second that the accident was about to occur, that evidence would not have justified a substantial award for her mental

13

anguish. *Id.* We concluded in *Elliott I* that the record conclusively established that the trial court should have awarded most of the settlement proceeds to the minor plaintiffs' wrongful death claims. *Id.*

After remand, Appellants requested the trial court to conduct an evidentiary hearing. The trial court denied their request. Appellants did not present any evidence by way of an offer of proof to show that more than a minimal allocation of the settlement proceeds to the survival claims would have been justified. In *Elliott I*, we remanded the allocation issue to the trial court for determination consistent with our opinion. *Elliott I*, 327 S.W.3d at 835. We did not require the trial court to conduct a further evidentiary hearing. Based on the record, we conclude that the trial court did not abuse its discretion by allocating 99.5% of the settlement proceeds to the wrongful death claims and 0.5% of the proceeds to the survival claims. Therefore, we also conclude that the trial court did not err in determining the amount of MHMR's advance credit against the payment of future benefits. Appellants' fifth, sixth, and seventh issues and the attorney ad litem's second issue are overruled.

*Minor Plaintiffs' Claims Against Elliott*

After remand, Appellants and the attorney ad litem on behalf of the minor plaintiffs filed motions in which, among other things, (1) they sought leave of court to amend their pleadings so that the minor plaintiffs could allege breach of fiduciary duty claims against Elliott and (2) they requested the trial court to hold an evidentiary hearing on their claims against Elliott. The following exchanges took place at the June 21, 2011 hearing:

> THE COURT: Based on what I'm hearing, and I'm of a mind to get this eventually to a final disposition. I know that there are ancillary issues that are not going to be resolved at this point, fiduciary duties.

. . . .

. . . And if there are other issues that Plaintiffs or Ad Litem feel like need to be developed, I think it would be best for this to get to a final disposition.  And then if [there are] causes of action to be pursued at that point, you can do that.  But, submit what you believe is the appropriate final judgment.

[ATTORNEY AD LITEM]: For clarification, do I have leave of Court to amend pleadings and include those causes of action against any of these parties including Mr. Elliott?

THE COURT: Not in this case, you do not.

[ATTORNEY AD LITEM]: Okay.  I have to file a different --

THE COURT: Correct.
. . . .

[ATTORNEY AD LITEM]: Okay.  And if I understand correctly, the Court will not have -- not entertain any further evidence or evidentiary hearing?

THE COURT: No.  I believe I have all the evidence [I need] to get to a final judgment in this matter.

[ATTORNEY AD LITEM]: Okay.

THE COURT: I understand that there may be other issues that need your position, but I think those would be best served outside of this cause of action.

On July 26, 2011, the trial court entered its final judgment on remand.  In the judgment, the trial court ordered "that Defendants and their Insurers be declared fully and finally discharged of and from any and all liability under the provisions of this Judgment and the Settlement Agreement and Release" and "that all causes

15

of action that were asserted or could have been asserted by the parties are dismissed with prejudice to the refiling of same."

Appellants contend in their twelfth through fifteenth issues (1) that the trial court erred by dismissing the minor plaintiffs' claims against Elliott with prejudice, (2) that the trial court erred by denying the minor plaintiffs' motion for leave to amend their pleadings to join Elliott as a party and to allege claims against him, (3) that the trial court violated the minor plaintiffs' due process rights regarding their claims or potential claims against Elliott, and (4) that the trial court erred by dismissing the minor plaintiffs' claims against Elliott without hearing or due process. Similarly, the attorney ad litem contends in his first issue (1) that the trial court erred by dismissing the minor plaintiffs' claims against Elliott with prejudice and (2) that the trial court erred by denying the minor plaintiffs' motion for leave to amend their pleadings so that they could join Elliott as a party in this case and assert claims against him.

Appellants and the attorney ad litem contend that the trial court dismissed the minor plaintiffs' claims against Elliott with prejudice and that, therefore, the trial court effectively denied the minor plaintiffs the opportunity to litigate their claims against Elliott in the future. Based on these contentions, Appellants and the attorney ad litem argue that the trial court violated the minor plaintiffs' rights to due process of law. The attorney ad litem asserts that, in any future case, Elliott will assert that the minor plaintiffs' claims against him are barred by res judicata and collateral estoppel based on the trial court's final judgment on remand in this case.

At the June 21, 2011 hearing, the trial court stated that the minor plaintiffs could bring their claims against Elliott in another case. Based on the trial court's statements, the trial court certainly did not intend to dismiss any claims that the minor plaintiffs might have against Elliott. In the judgment, the trial court ordered

16

"that all causes of action that were asserted or could have been asserted by the parties are dismissed with prejudice to the refiling of same."

Res judicata, or claim preclusion, bars a subsequent suit if the matters asserted in the subsequent suit arise out of the same subject matter as a previous suit and if the matters in the subsequent suit, through the exercise of reasonable diligence, could have been litigated in the prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Savs.*, 837 S.W.2d 627, 631 (Tex. 1992); *In re N.R.T.*, 338 S.W.3d 667, 678 (Tex. App.—Amarillo 2011, no pet.). The minor plaintiffs' wrongful death claims against the defendants in this case arose as a result of the April 12, 2006 automobile accident. The minor plaintiffs' breach-of-fiduciary-duty claims against Elliott arose as a result of Elliott's conduct in the course of representing them in the prosecution of their claims in this case. The minor plaintiffs contend that Elliott breached his fiduciary duties to them on May 29, 2008, when he entered into a Rule 11 agreement that related to MHMR's subrogation claim. *See* TEX. R. CIV. P. 11. The minor plaintiffs' claims against Elliott did not arise out of the automobile accident that gave rise to their claims against the defendants in this case, and the minor plaintiffs' wrongful death claims and breach-of-fiduciary-duty claims are against different parties. Because the minor plaintiffs' claims against Elliott did not arise out of the same subject matter as that involved in this wrongful death case, res judicata will not bar the minor plaintiffs' claims against Elliott in a future suit.

Collateral estoppel, or issue preclusion, prevents the relitigation of identical issues of fact or law that were actually litigated and essential to the final judgment in a prior suit. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721–22 (Tex. 1991); *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 817 (Tex. App.—Dallas 2012, no pet.). The facts and issues that relate to the minor plaintiffs' claims against Elliott were not litigated and were not essential to the trial

17

court's final judgment on remand. Therefore, collateral estoppel will not bar the minor plaintiffs' claims against Elliott in a future suit.

Applying the principles of res judicata and collateral estoppel, we conclude that the trial court's final judgment on remand did not dismiss the minor plaintiffs' claims against Elliott with prejudice. The trial court did not deny the minor plaintiffs the opportunity to litigate their claims against Elliott in another suit. Because the minor plaintiffs may assert those claims in a different suit, the trial court did not violate the minor plaintiffs' due process rights by denying their motion to amend their pleadings to allege claims against Elliott and by denying their request for an evidentiary hearing on those claims.

A trial court is given a great deal of discretion in matters of joinder, and its decision on such procedural issues will not be disturbed on appeal absent an abuse of discretion. *Varme v. Gordon*, 881 S.W.2d 877, 882 (Tex. App.—Houston [14th Dist.] 1994, writ denied); *see Fireman's Fund Ins. Co. v. McDaniel*, 327 S.W.2d 358, 373 (Tex. Civ. App.—Beaumont 1959, no writ). A trial court's decision on the matter of the joinder of an additional party is "generally based on practical considerations with a view to fair, orderly and timely prosecution and disposal of pending litigation." *Fireman's Fund Ins.*, 327 S.W.2d at 373. We review a trial court's ruling on whether to allow an amended pleading under an abuse of discretion standard. *Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 622 (Tex. App.—Dallas 2010, no pet.); *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied). A trial court has discretion to refuse an amended pleading when the amendment asserts a new cause of action or defense. *Halmos*, 314 S.W.3d at 622.

In this case, the automobile accident that gave rise to the wrongful death and survival claims occurred on April 12, 2006. The wrongful death suit was filed the next month. The trial court held the settlement hearing on June 24, 2008. Before

18

that hearing, $2,100,000 of the settlement proceeds were used to fund annuities for the benefit of the minor plaintiffs. At the June 21, 2011 hearing, the trial court stated its desire to bring the wrongful death case to a final resolution. At that time, the case had been pending for over five years. Allowing the minor plaintiffs to assert new causes of action against Elliott in the wrongful death case would have caused considerable delay in finally resolving the case. Based on the record, we cannot conclude that the trial court abused its discretion by denying the plaintiffs' and the attorney ad litem's motions to amend the pleadings so that the minor plaintiffs could assert claims against Elliott. Appellants' twelfth through fifteenth issues are overruled; the attorney ad litem's first issue is overruled.

### Elliott's Attorney's Fees

In *Elliott I*, we concluded that the trial court erroneously required Elliott to forfeit $100,000 of his attorney's fees to the minor plaintiffs and to pay $15,000 to the attorney ad litem. *Elliott I*, 327 S.W.3d at 837–38. After remand, Elliott filed a motion to recall distribution of settlement proceeds that was based on our reversal of the trial court's judgment. In the motion, Elliott requested the trial court to order Stacey's estate to return the $100,000 to him and the attorney ad litem to return the $15,000 to him. In the final judgment on remand, the trial court ordered Stacey's estate and the attorney ad litem to pay those respective amounts to Elliott.

In his third issue, the attorney ad litem contends that the trial court erred by ordering Stacey's estate to pay Elliott $100,000 and by ordering him to pay Elliott $15,000. The attorney ad litem asserts that "[t]he trial court erred in adjudging the amount of, the propriety of, and the payment source for attorney fees in a way that was unsupported by evidence."

Restitution after reversal of a judgment has long been the rule in Texas and elsewhere. *Miga v. Jensen*, 299 S.W.3d 98, 101 (Tex. 2009). "On the reversal of

19

the judgment, the law raises an obligation in the party to the record, who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost." *Id.* (quoting *Bank of U.S. v. Bank of Wash.*, 31 U.S. 8, 17 (1832)). Thus, a party who obtains a benefit through a trial court's judgment that is later reversed must return the benefit to the other party. *Outdoor Sys., Inc. v. BBE, L.L.C.*, 105 S.W.3d 66, 74 (Tex. App.—Eastland 2003, pet. denied); *Currie v. Drake*, 550 S.W.2d 736, 739 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.). As Elliott did by filing his motion to recall distribution of settlement proceeds in this case, a successful appellant is entitled to seek restitution in the same proceeding without resorting to a new suit. *Outdoor Sys.*, 105 S.W.3d at 75. The amount of attorney's fees that the trial court required Elliott to forfeit in its earlier judgment is undisputed. The trial court required Elliott to forfeit $100,000 of his fees to the minor plaintiffs and to effectively forfeit $15,000 to the attorney ad litem. Because we reversed the trial court's earlier judgment, the trial court did not err in the final judgment on remand by ordering Stacey's estate and the attorney ad litem to return those amounts to Elliott. *Outdoor Sys.*, 105 S.W.3d at 75.

The attorney ad litem also contends that the trial court deprived him of personal property without due process of law when it ordered him to pay Elliott $15,000. The attorney ad litem states in his brief that "no pleadings, notice, or trial occurred" that would have afforded him due process on such an award. First, Elliott's motion to recall distribution of settlement proceeds provided notice to the attorney ad litem that Elliott sought to recover $15,000 from him. Second, Elliott rightfully owned the erroneously forfeited funds. They were his personal property. The funds were improperly disbursed to the attorney ad litem under a judgment that was later reversed. Based on our reversal of that judgment, Elliott was entitled to restitution of the funds from the attorney ad litem. *Outdoor Sys.*, 105 S.W.3d at

20

75. The trial court did not deprive the attorney ad litem of personal property without due process of law.

Next, the attorney ad litem contends that the trial court denied the minor plaintiffs due process of law because it awarded the full payment of attorney's fees to Elliott without affording them the opportunity to plead their breach-of-fiduciary-duty claims against Elliott and to prove those claims to a jury. As we concluded above, the trial court did not violate the minor plaintiffs' due process rights because they may pursue their claims against Elliott in another case.

The attorney ad litem also contends that, in *Elliott I*, we mandated that the award of attorney's fees was to be "fully reconsidered" by the trial court on remand. The attorney ad litem asserts that the trial court could not satisfy this mandate without conducting an evidentiary hearing on issues related to the award of Elliott's attorney's fees. Our opinion in *Elliott I* did not require the trial court to hold an evidentiary hearing on any issue. In our analysis of the issue of an award of attorney's fees out of MHMR's subrogation recovery, we concluded that, "[o]n remand, the trial court may fully reconsider the attorney's fee issue under Section 417.003(c)." *Elliott I*, 327 S.W.3d at 836. This statement related solely to Section 417.003(c); it did not relate to the attorney's fees that Elliott received for representing the minor plaintiffs. Additionally, by our use of the word "may" in the opinion, we recognized the trial court's discretion to determine the attorney's fee issue under Section 417.003(c).

For the above reasons, we conclude that the trial court did not abuse its discretion by ordering Stacey's estate and the attorney ad litem to return Elliott's wrongfully forfeited attorney's fees to him. The attorney ad litem's third issue is overruled.

*This Court's Ruling*

We modify paragraph (b) of page 3 of the trial court's final judgment on remand to provide as follows:

> Therefore, Intervenor MHMR shall recover the additional amount of $23,367.18 from, jointly and severally, the Estate of Stacey Hollingshead; GREGORY HOLLINGSHEAD, as Next Friend and Guardian of the Person of KELCEY HOLLINGSHEAD, KLAYTON HOLLINGSHEAD and KANYON HOLLINGSHEAD, Minors; ROY LONG and ERNESTINE LONG, as Representatives of the Estate of STACEY HOLLINGSHEAD and as additional Next Friends of KELCEY HOLLINGSHEAD, KLAYTON HOLLINGSHEAD and KANYON HOLLINGSHEAD, Minors; Hall & Hall, P.O. Box 168, Sweetwater, Texas 79556; and Forbes & Forbes, 711 Myrtle, El Paso Texas 79901.

As modified, we affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


October 31, 2013

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

22