ACCEPTED
04-14-00905-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/2/2015 3:16:56 PM
KEITH HOTTLE
CLERK

**No. 04-14-00905-CV**

**In the Fourth District Court of Appeals
San Antonio, Texas**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/2/2015 3:16:56 PM
KEITH E. HOTTLE
Clerk

**Escondido Resources II, LLC,**
*Appellant*,

**v.**

**Justapor Ranch Company, L.C.,**
*Appellee*.

On Appeal from the 49th Judicial District Court
Webb County, Texas,
Cause No. 2013-CV7-001396-D1

### ESCONDIDO'S ORAL ARGUMENT EXHIBITS

James P. Keenan
State Bar No. 11167850
keenan@buckkeenan.com
J. Robin Lindley
State Bar No. 12366100
lindley@buckkeenan.com
BUCK KEENAN, LLP
700 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 225-4500
Facsimile: (713) 225-3719

Robert Dubose
State Bar No. 00787396
rdubose@adjtlaw.com
ALEXANDER DUBOSE
JEFFERSON & TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008
Telephone: (713) 523-2358
Facsimile: (713) 523-4553

*Additional counsel listed on
next page*

Wallace B. Jefferson
State Bar No. 00000019
wjefferson@adjtlaw.com
Rachel A. Ekery
State Bar No. 00787424
rekery@adjtlaw.com
ALEXANDER DUBOSE
JEFFERSON &TOWNSEND LLP
515 Congress Avenue
Suite 2350
Austin, Texas 78701
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

**ATTORNEYS FOR ESCONDIDO RESOURCES II, LLC**

# TABLE OF CONTENTS

**Tab**

The results of different conclusions about lease forfeiture........................................1

III(b) - original lease provision – amount of monthly production royalties.............2

III(g) - accounting / adjustment payments............................................................3

XIV – deadline for monthly production royalties / results of missing
    deadline...................................................................................................................4

Lease Amendment – amended amount of monthly production royalties................5

# The results of different conclusions about lease forfeiture

| Does lease language require termination for failure to reconcile underpayments? | Result |
|---|---|
| **1 – Unambiguously "no"** – Only Escondido's interpretation is reasonable | No termination (reverse and render) |
| **2 - Ambiguous** – Both interpretations are reasonable | No termination (reverse and render) |
| **3 – Unambiguously "yes", but not clear and unequivocal**: (1) only Justapor's interpretation is reasonable, but (2) language is not clear and unequivocal[1] | No termination (reverse and render) |
| **4 – Unambiguously "yes" *and* clear and unequivocal**: (1) only Justapor's interpretation is reasonable, and (2) language is clear and unequivocal. | Termination (affirm) |

For authorities, see Brief of Appellant at 33-37.

---

[1] *Outdoor Sys., Inc. v. BBE, L.L.C.*, 105 S.W.3d 66, 71 (Tex. App.—Eastland 2003, pet. denied). For the application of a "clear and unequivocal" standard in another context, *see Sparks v. Texas S. Univ.*, 824 S.W.2d 328, 330 (Tex. App.—Houston [1st Dist.] 1992, no writ) (requiring "explicit" waiver of state immunity to suit).

**III(b) - original lease provision – amount of monthly production royalties**[2]

"III.

The royalties to be paid by Lessee to Lessor are as follows, to-wit: ...

(b) On all gas production from this lease, ... Lessee shall calculate and pay royalties to Lessor on One-Fourth (1/4th) of all gas produced from this lease and its constituents and products sold or used therefrom, which <mark>royalties shall be calculated and paid to Lessor based upon the highest of</mark>

(i) the CURRENT MARKET VALUE of such gas production from this lease which is sold by, through or under Lessee or used by, through or under Lessee,

(ii) the CURRENT HOUSTON SHIP CHANNEL PRICE for such gas production, as hereinafter defined, or

(iii) the CURRENT PROCEEDS REALIZED BY LESSEE for such gas production, without deduction of any costs or expense except as hereinafter stipulated or,

(iv) the highest sales price of any gas were gas produced from the property could be present when sold to a third party."

---

[2] CR3:982 ¶III(b) (returns, indentation, emphasis added).

## III(g) - accounting / adjustment payments[3]

Paragraph III(g) discusses topics including:

**Accounting**

> "In accounting to Lessor for royalties payable hereunder, Lessee shall be required, on a monthly basis, if requested by Lessor, to account to Lessor for each well on leased premises based upon the volume of production...."

**Overpayment**

> "If it is agreed by Lessor or the royalty owner in question that a royalty owner was overpaid, then the overpaid royalty owner has the option of repaying such overpayment or allowing Lessee to recoup such overpayment out of future royalty payments on a schedule and in monthly amounts agreed to by such overpaid royalty owner and Lessee. Any overpaid royalty owner shall not be charged interest on overpaid sums...."

**Underpayment**

> "In the event the prices and/or volumes used by Lessee in calculating and payment of production royalties paid to Lessor was less than those required to be paid, Lessee shall issue its check to make up the difference on or before March 1st of each year."

---

[3] CR3:987-88 ¶III(g).

**XIV – deadline for monthly production royalties / results of missing deadline[4]**

"Royalties payable to Lessor in the manner hereinabove provided for are due and payable to Lessor within a period of sixty (60) days following each month's production of oil or gas produced and sold from the premises. Thereafter, such payments shall be delinquent and will bear interest at the rate of Ten (10%) percent per annum, compounded monthly, until paid. In the event that such royalties are not paid and become delinquent, and there is no title dispute or title defect, this lease shall terminate *ipso facto* on the date that such royalties were due and not paid. In the event such royalties are not paid and become delinquent, Lessor without other notice than this paragraph, shall be authorized to file suit in the District Court of Webb County, Texas, for recovery of such delinquent royalties.…"

---

[4] CR3:996-97 ¶XIV (emphasis added).

# Lease Amendment – amended amount of monthly production royalties

"2.

Paragraph III is amended to provide:

(a)    On all oil and other liquid hydrocarbons produced from this lease, Lessee shall be required to pay Lessor the higher of one-fourth ($1/4^{th}$) of the posted price for similar type of oil produced in Texas Railroad District 4 (as said region now exists) or for similar type of oil produced from this lease or the current market value of that produced and saved from said land, subject only to deductions imposed by purchaser, if any, for transportation of product to the purchasers facility. All oil or other liquid hydrocarbons produced from this lease shall be treated and stored on this lease until purchased by Lessee.

(b) II   The term "HOUSTON SHIP CHANNEL PRICE" shall be construed to mean the price or value which is equal to the highest reported on-shore spot purchase price being paid during the month of production by purchasers of gas produced in the Texas Gulf Area, to be determined on a monthly basis by reference to the index spot gas price (large packages only) for gas delivered to pipelines at Houston Ship Channel/Beaumont, Texas, as recorded in Inside F.E.R.C. vs. Gas Market Report published by McGraw-Hill, minus five (.05) cents per MMBtu, (an agreed upon reasonable transportation charge for this lease production) adjusted for MMBtu content, and without any other deduction by Lessee save unreimbursed severance taxes actually paid by the Lessee In behalf of Lessor to the taxing authority. In the event the above designated gas price Index publication ceases to exist, (or ceases to report such "Houston Ship Channel Price" hereinabove referred to), the lessor and Lessee shall agree on another publication generally acceptable as providing comparable accurate current data as to current on-shore spot prices for gas delivered Into pipelines by purchasers In said area, which substituted publication shall be used in lieu of the above-described publication as part of the foregoing standard, upon which Lessor's royalty shall be calculated and paid. In the event no price Index publication can be agreed upon as reliable, then a reliable governmental or other non-partisan publication evaluating the same Information. shall be used, with current payments to be made on the most current Information available and then adjusted, as necessary, within thirty (30) days following the availability of the governmental data or other nonpartisan publication, or if no such publication is available for purposes, hereof, this standard, as an element for calculation of Lessor's royalties shall cease to exist. Provided however, Lessee shall have the right to enter into gas sales' contracts that will **determine the price upon which gas royalty is calculated** if such contracts provide no less than a price redetermination every six months and provide the following minimum terms:

<u>Price</u>:

5

The price to be paid by Buyer to Seller for each MMBtu of Gas purchased hereunder shall be: (i) ninety-five percent (95%) of the "Houston Ship Channel Index Price" for monthly volumes averaging 8,000 Mcf per day or less; (ii) ninety-six percent (96%) of the "Houston Ship Channel Index Price" for monthly volumes averaging 5001- 10,000 Mcf per day; (iii) ninety-seven percent (97%) of the "Houston Ship Channel Index Price" for monthly volumes averaging 10,001- 15,000 Mcf per day; and (iv) ninety-eight percent (98%) of the "Houston Ship Channel Index Price" for monthly volumes averaging over 15,000 Mcf per day....[additional minimum terms omitted].

Provided further, Lessor shall provide copies of such contracts, and any amendments thereto, to Lessee upon execution along with a written statement that such contract indicates that all compensation received by Lessee for sale of the gas, and Lessor has at all times the right to take his gas in kind as provided herein."[5]

---

[5] CR3:1014-15 (emphasis added).

Respectfully submitted,

/s/Robert Dubose

James P. Keenan
State Bar No. 11167850
keenan@buckkeenan.com
J. Robin Lindley
State Bar No. 12366100
lindley@buckkeenan.com
BUCK KEENAN, LLP
700 Louisiana, Suite 5100
Houston, Texas 77002
Telephone: (713) 225-4500
Facsimile: (713) 225-3719

Robert Dubose
State Bar No. 00787396
rdubose@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON
  & TOWNSEND LLP
1844 Harvard Street
Houston, Texas 77008
Telephone: (713) 523-2358
Facsimile: (713) 523-4553

Wallace B. Jefferson
State Bar No. 00000019
wjefferson@adjtlaw.com
Rachel Ekery
State Bar No. 00787424
rekery@adjtlaw.com
ALEXANDER DUBOSE JEFFERSON
  &TOWNSEND LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

Kirsten Castañeda
ALEXANDER DUBOSE JEFFERSON
  &TOWNSEND LLP
4925 Greenville Avenue, Suite 510
Dallas, Texas 75206
Telephone: (214) 369-2358
Facsimile: (214) 369-2359

**ATTORNEYS FOR APPELLANT**

7

**CERTIFICATE OF SERVICE**

On November 2, 2015, I electronically filed the Oral Argument Exhibits with the Clerk of Court using the eFile.TXCourts.gov electronic filing system which will send notification of such filing to the following:

Timothy Patton
TIMOTHY PATTON, P.C.
14546 Brook Hollow #279
San Antonio, Texas 78232
tpatton@tp-pc.com

Jose M. Rubio, Jr.
JOE RUBIO LAW FIRM
1000 Washington Street, Suite 4
Laredo, Texas 78040
joerubio@joerubiolawfirm.com

Patton G. Lochridge
MCGINNIS LOCHRIDGE & KILGORE LLP
600 Congress Avenue, Suite 2100
Austin, Texas 78701
plochridge@mcginnis1aw.com

/s/Robert Dubose
Robert Dubose

8